# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ( | **FOR PUBLICATION** |
| Appellee, | ( | **Filed:** September 28, 1998 |
| v. | ( | Madison Circuit |
| | ( | Hon. Whit LaFon, |
| DENNIS KEITH and, | ( | Judge |
| TIMOTHY COLLINS | ( | |
| Appellants. | ( | No. 02S01-9604-CC-00035 |

**FILED**

**September 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**For State-Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Elizabeth T. Ryan
Assistant Attorney General
Nashville, Tennessee

James G. Woodall
District Attorney General
Twenty-Sixth Judicial District
Jackson, Tennessee

Nick Nicola
Assistant District Attorney General
Jackson, Tennessee

**For Defendants-Appellants:**

Joe H. Byrd, Jr.
Jackson, Tennessee

## O P I N I O N

AFFIRMED.                                        DROWOTA, J.

We granted this appeal to consider two issues: 1) whether the investigative automobile stop in this case was based upon reasonable suspicion, supported by specific and articulable facts, that a crime was being committed; and 2) whether the search warrant in this case is invalid because the issuing judge failed to complete the jurat attesting that the affidavit in support of issuance of the warrant was executed under oath by the affiant.

Upon careful consideration, we agree with the Court of Criminal Appeals that the investigative automobile stop was based upon reasonable suspicion and therefore constitutionally permissible. We have also determined that although it is preferable that every affidavit contain a completed jurat, the omission of, or defect in, the jurat does not affect the validity of a warrant issued upon probable cause when it is proven by extrinsic evidence that the supporting affidavit was properly sworn by the affiant. Accordingly, we affirm the judgment of the Court of Criminal Appeals which reversed the trial court's grant of the defendant's motion to suppress. The cause is remanded to the trial court for further necessary proceedings.

## FACTUAL BACKGROUND

On September 9, 1993, Investigator Danny Mullikin of the Drug Task Force of the 26th Judicial District, received information from a confidential informant that the defendants, Dennis Keith and Timothy Collins were storing illegal drugs in their home located at 225 Hollywood in the City of Jackson. The informant also

provided a physical description of the defendants. This confidential informant previously had supplied the Task Force with reliable information which had resulted in five separate arrests for narcotic-related offenses and the seizure of contraband. Responding to this information, Investigator Mullikin initiated surveillance of the residence located at 225 Hollywood, and on one occasion, he observed a red Honda CRX vehicle parked outside the residence.

Approximately three days after receiving the information from the confidential informant, on the evening of September 12, 1993, Investigator Mullikin received a telephone call from an anonymous informant who also related that the residents of the house located at 225 Hollywood were involved in the possession and sale of illegal drugs. The informant claimed to have observed illegal drugs inside the residence within four days of the call. The informant further claimed that shortly before placing the call he observed marijuana in a red Honda CRX vehicle which was parked outside the residence and saw both suspects present at the residence. The anonymous informant supplied defendant Collins' name as the owner of the Honda and also provided a physical description of both defendants which matched the descriptions previously given by the confidential informant. Finally, the anonymous informant said the defendants worked during the day but used the Honda to sell and deliver illegal drugs late at night.

Less than one hour after receiving the phone call from the anonymous informant, Investigator Mullikin and another officer again set up surveillance near

the defendants' residence.  They observed the red Honda vehicle at the residence, and approximately five minutes after the officers arrived, two individuals matching the physical descriptions given by both informants came out of the residence and entered the automobile.  When the vehicle left the driveway and traveled north on Hollywood, the officers followed and stopped it approximately one-fourth of a mile from the residence.

Defendant Collins was driving the automobile and Keith was the passenger.  After confirming that Collins owned the car, Investigator Mullikin obtained permission from Collins to search the vehicle.  During the search, the officers discovered a small amount of marijuana and two Lorazepam tablets, a Schedule IV controlled substance.  Collins said the Lorazepam tablets had been given to him by a female friend and admitted that he did not have a prescription for the drugs.

The officers placed Collins and Keith under arrest and then sought a warrant to search the residence.  Investigator Mullikin provided an affidavit in support of issuance of the search warrant, and in it he recounted the fact that illegal drugs had been found in the defendants' vehicle during the investigative stop.  A search warrant was issued by Walter Drake, Municipal Court Judge of the City of Jackson.  The officers executed the search warrant and seized from the residence several pounds of marijuana, marijuana seed, Xanax, LSD, several other pills, and drug paraphernalia.

As a result of the search, the defendants were charged by indictment with possession of marijuana with intent to sell or deliver, possession of Schedule IV controlled substances with intent to sell or deliver, and possession of drug paraphernalia. The defendants moved to suppress the evidence seized during the search of the Honda automobile and during the search of their residence. They argued that their constitutional rights under Article I, Section 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution had been violated because the officers lacked reasonable suspicion to initiate the investigative stop of their automobile. The defendants also argued that the evidence seized during the search of their residence should be suppressed as "fruit of the poisonous tree" because a portion of the information contained in the affidavit supporting issuance of the search warrant was derived from the illegal investigative stop.

Following a hearing, the trial judge found the investigative stop of the defendants' automobile constitutionally invalid and, therefore, granted the motions to suppress the evidence seized during the search of the vehicle and during the search of the defendants' residence. The State sought and obtained an interlocutory appeal from the trial court's decision. Finding that the evidence in the record preponderated against the trial court's conclusion that the anonymous tip was not sufficiently reliable to establish reasonable suspicion to support the investigative stop of the defendants' vehicle, the Court of Criminal Appeals reversed the judgment of the trial court and remanded for further proceedings.

Thereafter, the defendants filed a joint application for permission to appeal in this Court, arguing first that the Court of Criminal Appeals erred in concluding that the evidence preponderated against the trial court's decision, and second, that the search of the defendants' residence was constitutionally invalid because the affidavit supporting issuance of the search warrant does not contain a written certificate of the issuing judge attesting that the affidavit had been sworn. We granted the defendants' application for permission to appeal and, for the reasons, hereafter explained, now affirm the judgment of the Court of Criminal Appeals.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. The findings of a trial court in a suppression hearing will be upheld unless the evidence preponderates against those findings. Id. The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews *de novo*. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## REASONABLE SUSPICION

In this Court, the defendants initially contend that the investigative automobile stop was unconstitutional because the anonymous informant's tip did not demonstrate the informant's veracity or basis of knowledge as required by this Court's decisions in State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989) and State v. Pulley, 863 S.W.2d 29 (Tenn. 1993). The State responds that the investigative stop in this case was constitutionally permissible, considering the totality of the circumstances, including the information which previously had been provided by the confidential informant and the independent police corroboration, because the law enforcement officers had reasonable suspicion, supported by specific and articulable facts, to believe that the defendants were committing a crime.

Both the Fourth Amendment[1] to the United States Constitution and Article I, Section 7[2] of the Constitution of Tennessee prohibit unreasonable searches and seizures and direct that search warrants be issued upon probable cause. These constitutional provisions are designed to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967);

---

[1]The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). The text of the Fourth Amendment is as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2]Article I, Section 7 provides "that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted."

see also State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997); Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

Accordingly, under both the federal and state constitutions, warrantless searches and seizures such as the investigative automobile stop which occurred in this case are presumed to be unreasonable. Evidence discovered as a result thereof is subject to suppression unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); Yeargan, 958 S.W.2d at 630; State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).

One such exception was announced in the landmark case of Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), in which the United States Supreme Court held that a law enforcement officer may temporarily seize a citizen if the officer has a reasonable suspicion, based upon specific and articulable facts, that a criminal offense has been, is being, or is about to be committed. An investigative stop of an automobile is also constitutional if law enforcement officials have a reasonable suspicion, supported by specific and articulable facts, that the occupants of the vehicle have committed, are committing, or are about to commit a criminal offense. United States v. Cortez,

449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); Prouse, 440 U.S. at 663, 99 S.Ct. at 1401; Yeargan, 958 S.W.2d at 631; Watkins, 827 S.W.2d 294. Moreover, the facts forming the basis of an officer's reasonable suspicion need not rest upon the personal knowledge or observation of the officer. Indeed, in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), the United States Supreme Court rejected the argument "that reasonable cause for a stop and frisk can only be based on the officer's personal observation"[3] and sustained a Terry investigative stop and frisk undertaken on the basis of a tip given to the officer by a known informant who had provided reliable information in the past. Id. 407 U.S. at 147, 92 S.Ct. at 1924.[4]

This Court also has upheld the constitutionality of investigative stops of motor vehicles based upon reasonable suspicion, and we have approved such stops even though the specific and articuable facts establishing the reasonable suspicion were derived from anonymous tips. Simpson, 968 S.W.2d 776, 781 (Tenn. 1998); Pulley, 863 S.W.2d at 29. However, when law enforcement officials initiate an investigative stop as a result of information provided by an anonymous informant, Tennessee law requires some showing of both the informant's veracity or credibility and his or her basis of knowledge. Id.; compare Jacumin, 778 S.W.2d at 436 (discussing the showing required when an anonymous informant's tip is relied upon to establish probable cause for issuance of a warrant). While

---

[3]Id., 407 U.S. at 146, 92 S.Ct. at 1923.

[4]At the time of the decision in Adams, the two-pronged veracity and basis of knowledge test was the standard employed by federal courts to analyze the reliability of an informant's tip. The federal courts did not adopt the "totality of the circumstances" test until 1983. See Illinois v. Gates, 462 U.S. 213, 102 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

independent police corroboration may be relied upon to make up deficiencies, "each prong represents an independently important consideration that must be separately considered and satisfied in some way." Simpson, 968 S.W.2d at 781; Pulley, 863 S.W.2d at 31.

> We have recognized, however, that
>
> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Pulley, 863 S.W.2d at 32, quoting Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added). As a result, the two-pronged test of reliability is not as strictly applied if the anonymous informant's tip is being used to establish reasonable suspicion for an investigative stop rather than probable cause for a search or seizure. Simpson, 968 S.W.2d at 782. In evaluating the reliability of an anonymous informant's tip, the circumstances under which a tip is given are important and may sufficiently relate the informant's basis of knowledge, even in the absence of an explicit statement by the informant. Id. For example, if an informant reports an incident at or near the time of its occurrence, "a court can often assume that the report is first-hand, and hence reliable." Id. In addition, if a tip is contemporaneously corroborated by police, it is reasonable to infer eyewitness reliability of the informant. Id. Police corroboration of several aspects of an informant's report may also satisfy unknowns about an

informant's credibility. Id. Establishing that an anonymous informant's data is reliable may also satisfy the credibility prong. State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992).

Considering the information provided by the anonymous informant in this case in light of these well-settled principles of law, we conclude that the proof in this record preponderates against the trial court's finding that the veracity and reliability of the tip were not sufficiently established. The anonymous informant provided law enforcement officials with the name of one of the defendants, a physical description of both defendants, a description of the vehicle which they allegedly were using in drug transactions, a description of their schedule, and the location of the defendants' residence in which illegal drugs were being stored. In addition, the anonymous informant told officers that the two suspects and the vehicle were then present at the house located at 225 Hollywood. Finally, the anonymous informant claimed to have observed marijuana inside the vehicle shortly before placing the call and also claimed to have observed illegal drugs inside the house within the previous four days.

Some of the information provided by the anonymous informant was immediately corroborated by the information previously provided by the confidential informant, including the location of the residence, the physical description of the defendants, and the presence of illegal drugs inside the residence within the previous days. In addition, the officers themselves previously

-11-

had observed at 225 Hollywood a vehicle matching the description given by the anonymous informant.

Other details were corroborated when the officers arrived at the scene within an hour of the tip. For example, as claimed by the informant, both the vehicle and two individuals matching the descriptions given by both of the informants were present at the residence when police arrived. In addition, police observed the suspects leave the house in the Honda late in the evening, which was behavior consistent with the pattern of operation described by the anonymous informant. As previously stated, if a tip is contemporaneously corroborated by police, it is reasonable to infer the first-hand, eyewitness reliability of the informant. In our view, the circumstances under which the tip was given, and the police corroboration of several key aspects of the tip sufficiently satisfy the two-pronged test of reliability.

> As the United States Supreme Court recently has recognized,
>
> [a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are common sense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. Yeargan, 958 S.W.2d at 632; Watkins, 827 S.W.2d at 294; Cortez,

449 U.S. at 417, 101 S.Ct. at 695. Circumstances relevant to the evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him--inferences and deductions that might well elude an untrained person. Yeargan, 958 S.W.2d at 632; Watkins, 827 S.W.2d at 294; Cortez, 449 U.S. at 418, 101 S.Ct. at 695; Terry, 392 U.S. at 21, 88 S.Ct. at 1880. Finally, the content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion. Id.

> The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.

Sokolow, 490 U.S. at 7-8, 109 S.Ct. at 1585 (internal citations and quotations omitted); see also Yeargan, 958 S.W.2d at 632.

Considering the totality of the circumstances in this case, including the personal observations of the officers, the information provided by the confidential informant, and the information provided by the anonymous informant, we conclude that the evidence preponderates against the trial court's finding and instead demonstrates that the officers had a reasonable suspicion, supported by specific

and articulable facts, that the defendants were committing or about to commit a criminal offense.

## VALIDITY OF AFFIDAVIT SUPPORTING SEARCH WARRANT

Having determined that the investigative automobile stop was constitutionally valid, we must next consider the defendants' contention that the evidence seized from the residence pursuant to the warrant should be suppressed because the judge failed to sign the jurat attesting that the affidavit was executed under oath. This is an issue of first impression in Tennessee.

A brief summary of the relevant facts is necessary to place this issue in context. Since the trial court in this case suppressed the evidence seized pursuant to the warrant as "fruit of the poisonous tree" upon finding the initial investigative stop invalid, the defendants did not seek to have the warrant itself declared invalid in the trial court. While the defendants mentioned the issue in their brief to the Court of Criminal Appeals, they did not diligently pursue this issue until they filed their joint application for permission to appeal in this Court. In that application the defendants argued both that the Court of Criminal Appeals erred in reversing the trial court's judgment with respect to the investigative stop, and also that the evidence seized pursuant to the warrant should be suppressed because the affidavit supporting issuance of the warrant had not been signed by Investigator Mullikin, the affiant, and also because Judge Drake had failed to complete the portion of the affidavit known as the jurat, which is the written

certificate of the issuing judge attesting that the affiant submitted the affidavit under oath.[5]

This Court granted the defendants permission to appeal. Thereafter, the State moved to supplement the record, stating that the unsigned copy of the affidavit contained in the record on appeal actually was not the affidavit upon which Judge Drake had based his determination of probable cause. The defendants filed a response in opposition to the State's motion. This Court remanded the matter to the trial judge to determine whether the record should be supplemented pursuant to Rule 24(e),[6] Tenn. R. App. P.

Following a hearing, the trial court permitted the State to supplement the record with the affidavit which actually had been presented to Judge Drake and upon which he had based his determination of probable cause. Though the affidavit submitted in support of the warrant contained the signature of the affiant, Investigator Milliken; the jurat attesting that the affidavit had been given under oath was incomplete. However, the trial court permitted the State to also supplement the appellate record with affidavits from Judge Drake and Investigator Mullikin stating that the affidavit had been sworn by Investigator Mullikin before

---

[5]See D.T. McCall & Sons v. Seagraves, 796 S.W.2d 457, 464 (Tenn. App. 1990) (defining "jurat" and citing cases); see also State v. Colon, 644 A.2d 877, 879 (Conn. 1994).

[6]Subsection (e) provides that "[i]f any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a suppllemental record be certified and transmitted." See also Bradshaw v. Daniel, 854 S.W.2d 865, 868-69 (Tenn. 1993).

issuance of the warrant even though Judge Drake failed to complete the jurat. The supplemental record was then transmitted to the Clerk of this Court.

In this Court, the defendants argue that an affidavit supporting issuance of a search warrant must contain a jurat completed by the issuing judge attesting that the affidavit was executed under oath. According to the defendants, extrinsic evidence is not a permissible means to prove that an affidavit was properly sworn. Because the affidavit in this case did not contain a completed jurat on its face, the defendants contend that the search warrant issued in reliance upon the affidavit is invalid and evidence seized pursuant to the warrant should be suppressed.

While conceding that a jurat is the preferred means of establishing that an affidavit was executed under oath, the State argues that it is not the only permissible means of satisying the oath requirement. According to the State, an incomplete or defective jurat does not vitiate the validity of a warrant when it is proven by extrinsic evidence that the supporting affidavit was properly sworn by the affiant. The State asserts that the warrant in this case is valid, despite the incomplete jurat, because the affidavits of Investigator Mullikin and Judge Drake establish that the supporting affidavit was properly sworn.

We begin our analysis of this issue by reiterating that under both the federal and state constitutions no warrant is to be issued except upon probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Jacumin, supra; Tenn. Code Ann. § 40-6-103 (1997 Repl.). The Fourth

Amendment to the United States Constitution explicitly mandates that search warrants issue only "upon probable cause, supported by Oath or affirmation." Though, Article I, Section 7 of the Tennessee Constitution does not require an oath or affirmation, it precludes issuance of warrants except upon "evidence of the fact committed." Moreover, the General Assembly has expressly directed that a search warrant may be issued only upon a written and sworn affidavit which contains allegations establishing probable cause. Tenn. Code Ann. § 40-6-103[7] and -104[8] (1997 Repl.); Tenn. R. Crim. P. 41(c);[9] Jacumin, 778 S.W.2d 432. Likewise, this Court previously has recognized that a written and sworn affidavit containing allegations from which the magistrate can determine whether probable cause exists is an indispensable prerequisite to the issuance of a search warrant in this State. Id.; see also State ex rel. Blackburn v. Fox, 200 Tenn. 227, 230, 292 S.W.2d 21, 23 (Tenn. 1956).

The law in this State is clear that a written and sworn affidavit is an essential prerequisite to the issuance of a valid search warrant. However, we have found no constitutional or statutory rule stating that an indispensable prerequisite to a valid affidavit is a jurat -- a written certificate of the issuing judge

---

[7]Pursuant to that statute "[a] search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." (Emphasis added.)

[8]That statutory provision specifies that "[t]he magistrate, before issuing the warrant, shall examine on oath the complainant and any witness the complainant may produce, and take their affidavits in writing, and cause them to be subscribed by the persons making them. The affidavits must set forth facts tending to establish the grounds of the application or probable cause for believing that they exist."

[9]In pertinent part the Rule specifies that "[a] warrant shall issue only on an affidavit or affidavits sworn to before the magistrate and establishing the grounds of issuing the warrant."

attesting that the affiant executed the affidavit under oath.  An affidavit generally has been defined in case law as "a statement in writing, signed, and made upon oath before an authorized magistrate."  Watts v. Carnes, 51 Tenn. 532, 534 (1871).  Certainly nothing in that definition suggests that a jurat is an essential component of an affidavit.  Moreover, Tennessee decisions addressing issues similar to the one raised by this appeal lend support to the proposition that a jurat is not an essential prerequisite to a valid affidavit so long as proof is offered to establish that the affidavit was properly sworn.

For example, in Wiley v. Bennett, 68 Tenn. 581 (1877), this Court considered whether an attachment was rendered invalid because the issuing clerk failed to attest that the supporting affidavit had been sworn.  The Court first noted that "the affidavit was signed, and purports to have been sworn to on its face."  Id. at 582.  Next, the Court observed that the clerk had testified that the affidavit "was duly sworn to before issuance (of the attachment), but by oversight the attestation of the fact was omitted."  Id.  Finally, in rejecting the challenge, this Court emphasized that "[t]he fact that it was sworn to is the substantial matter, and the omission of the clerk to do his duty by attesting it, cannot be allowed to prejudice the party."  Id.  This principle was reaffirmed five years later in Agricultural Association v. Madison, 77 Tenn. 407, 409 (1882) ("When the affidavit was actually sworn to and the clerk fails to attest it, it is not fatal. . . .").  Though these decisions do not address an affidavit that is given in support of a search warrant, they are persuasive authority for the proposition that a defective or incomplete jurat does not invalidate an affidavit when it is established by other proof that the

-18-

affidavit was properly sworn.[10]

Moreover, we observe that a majority of other state courts considering whether a search warrant is void if based upon an affidavit which contains an incomplete or defective jurat have concluded that a jurat is not an essential element of an affidavit but is simply evidence of the fact that the affidavit was duly sworn by the affiant. In the face of an incomplete or defective jurat, these state courts allow extrinsic evidence to prove that the affidavit was properly sworn. State v. Colon, 644 A.2d 877 (Conn. 1994); Bigler v. State, 602 N.E.2d 509 (Ind. App. 1992); State v. Journey, 562 P.2d 138 (Kan. App. 1977); Powell v. State, 355 So.2d 1378 (Miss. 1978); People v. Rodriguez, 541 N.Y.S.2d 491 (N.Y.App. Div. 1989); People v. Zimmer, 490 N.Y.S.2d 912 (N.Y. App. Div. 1985); State v. Flynn, 235 S.E.2d 424 (N.C. App. 1977); White v. Oklahoma, 702 P.2d 1058 (Okla. Crim. App. 1985); State v. Nunn, 783 P.2d 26 (Or. App. 1989); Huff v. Commonwealth, 194 S.E.2d 690 (Va. 1973); see also Land Clearance for Redevelopment Authority v. Zitko, 386 S.W.2d 69 (Mo. 1965) (omission of jurat will not render properly executed affidavit a nullity); 3 Am.Jur.2d 478 Affidavits §17 (1986); 2A C.J.S. 467 Affidavits § 31 (1972) ("The jurat is not such a part of an affidavit that its omission will render the affidavit a nullity, at least where the affidavit is otherwise properly executed. Thus, ordinarily a jurat is not essential to an affidavit if the fact of the

---

[10]In Harvey v. State, 166 Tenn. 227, 60 S.W.2d 420 (1933) and in Watt, supra, the affidavits were not sworn nor signed until after the warrant or attachment had issued. Accordingly, in those cases, this Court held that the magistrate had no authority to issue the warrant or attachment because no affidavit had supported its issuance. This Court refused to permit extrinsic proof to contradict the express terms of the affidavit and retroactively confer authority upon the issuing judge. In this appeal, there is no attempt to offer extrinsic proof to contradict the express terms of the affidavit which recites on its face that it was being given under oath.

due administration of the oath is otherwise shown.")[11]  The majority rule is consistent with prior Tennessee case law on the subject, and it is sound as a matter of policy and practice.

Tennessee law is clear that in determining whether or not probable cause supported issuance of a search warrant only the information contained within the four corners of the affidavit may be considered.  Jacumin, 778 S.W.2d at 432. However, we are not confined to the four corners of the affidavit in determining whether it has been properly sworn.  Accordingly, we conclude that although it is preferable that every affidavit contain a completed jurat, an incomplete or defective jurat does not invalidate a warrant issued upon probable cause if it is proven by extrinsic evidence that the supporting affidavit was properly sworn by the affiant.  Any other conclusion would impose an undue penalty upon law enforcement for an inadvertent omission on the part of the issuing judge.  Colon, 644 A.2d at 883.

Applying that rule to the record in this appeal, we reject the defendants' claim that the search warrant is invalid.  The proof establishes that the affidavit was given under oath.  First of all, the affidavit recites on its face that it was being given under oath.  Investigator Milliken signed the affidavit.  The search warrant in

_____

[11]The following jurisdictions have held the omission of a jurat to be fatal to the validity of an affidavit.  We note that in these jurisdictions, either the state constitution or a statutory provision explicitly required that an affidavit contain the signature of the officer administering the oath. Commonwealth v. Dozier, 366 N.E.2d 1270 (Mass. App. 1977); Commonwealth v. McAfee, 326 A.2d 522 (Penn. 1974); Elam v. Yale Clinic, 783 S.W.2d 638, (Tex. App. 1989). Though none involve an affidavit given in support of a search warrant, the following state courts have held, in the absence of a statutory provision, that a valid affidavit requires a completed jurat.  Ex Parte Finance America Corp., 507 So.2d 458 (Ala. 1987); Phoebe Putney Mem. Hosp. v. Skipper, 487 S.E.2d 1 (Ga. App. 1997); Hough v. Weber, 560 N.E.2d 5 (Ill. App. 1990).

the record recites that it was based upon an affidavit given by Investigator Milliken. Judge Drake signed the search warrant. Finally, the record contains affidavits from both Investigator Milliken and Judge Drake stating that the affidavit was given under oath. Accordingly, despite the incomplete jurat, the other evidence in this record establishes that the affidavit was properly sworn.

## CONCLUSION

For the reasons previously stated, we conclude that the investigative stop in this case was based upon reasonable suspicion and therefore constitutionally permissible. We also conclude that the search warrant issued upon a written and sworn affidavit. Accordingly, we affirm the judgment of the Court of Criminal Appeals which reversed the trial court's grant of the defendants' motion to suppress. This cause is remanded to the trial court for further necessary proceedings.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.,
Holder, J.

Birch, J. - See Separate Dissenting Opinion.