IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. WILLIAM MACK GROSS**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 225943     Douglas A. Meyer, Judge**

---

**No. E2000-00039-CCA-R3-CD - Decided July 6, 2000**

---

Defendant William Mack Gross pled guilty to violation of the habitual motor vehicle offender law, reserving the right to appeal a certified question of law pursuant to Rule 37, Tennessee Rules of Criminal Procedure.  The precise issue reserved was whether the stop of his vehicle by a law enforcement officer, based upon a citizen's call to the police department of a "suspicious vehicle" violated his constitutional rights to be free from unreasonable searches and seizures.  The trial court denied the motion to suppress.  After review of the record, briefs of the parties, and hearing arguments of counsel, we reverse the judgment of the trial court and dismiss the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Dismissed.**

WOODALL, J. delivered the opinion of the court, in which WILLIAMS, J. and GLENN, J. joined.

Lloyd A. Levitt, Chattanooga, Tennessee, for the appellant, William Mack Gross.

Paul G. Summers, Attorney General and Reporter, Elizabeth B. Marney, Assistant Attorney General, William H. Cox, III, District Attorney General, and Parke Masterson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

During the suppression hearing, Officer Larry Nabors of the Soddy Daisy Police Department testified that at approximately 2:00 a.m. on September 30, 1998, he was dispatched to investigate a suspicious vehicle at a trailer park.  The dispatcher advised Nabors that an upset woman had reported that she had been followed into the trailer park by a decommissioned police vehicle.  The woman also reported that the driver of the vehicle had stopped in front of her residence and turned the vehicle's lights off.

Officer Nabors testified that approximately five minutes after he received the dispatch, he drove to the trailer park and went to the lot number indicated by the dispatcher, but he did not see

the vehicle that had been described. Nabors then left the trailer park and he parked his vehicle in the parking lot of an adjacent store. Approximately five minutes later, Nabors saw the decommissioned police car come out of the trailer park. At his point, Nabors activated his blue lights and stopped the vehicle. Nabors then learned that Defendant was driving the vehicle in violation of a habitual motor vehicle offender order.

Officer Nabors testified that the dispatcher had not reported that the vehicle had done anything illegal or that anyone had committed a crime that involved the vehicle. Nabors admitted that the "vehicle wasn't involved in any type of violation of law", and the sole reason he stopped the vehicle was to find out what the driver was doing in the trailer park.

## ANALYSIS

Defendant contends that the trial court erred when it denied his motion to suppress the evidence obtained after he was stopped by Officer Nabors.

### A.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the application of the law to the facts is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

### B.

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend IV. Similarly, Article I, Section 7 of the Tennessee Constitution guarantees, "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ." Tenn. Const. art. I, § 7. Unless it falls within a specifically established and well-delineated exception, a search conducted without a warrant is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (citations omitted). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998).

One such exception to the warrant requirement permits a police officer to temporarily seize a citizen if the officer has a reasonable suspicion, based upon specific and articulable facts, that a criminal offense has been, is being, or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Under this exception, "[a]n investigative stop of an automobile is . . . constitutional if law enforcement officials have a reasonable suspicion, supported

by specific and articulable facts, that the occupants of the vehicle have committed, are committing, or are about to commit a criminal offense." Keith, 978 S.W.2d at 865.

A court must consider the totality of the circumstances when determining whether a police officer had a reasonable suspicion, supported by specific and articulable facts, that criminal activity had occurred, was occurring, or would occur. Id. at 867. "Circumstances relevant to the evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Id. "A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him--inferences and deductions that might well elude an untrained person." Id.

## C.

A seizure implicating constitutional concerns occurs when, in view of all the circumstances surrounding an encounter with a police officer, a reasonable person would have believed that he or she was not free to leave. State v. Daniel, 12 S.W.3d 420, 425 (Tenn. 2000). A person is seized for Fourth Amendment purposes when a police officer activates the blue lights on his or her patrol vehicle and stops the person's vehicle. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993).

## D.

There is no dispute that Defendant was "seized" for constitutional purposes when Officer Nabors activated his patrol vehicle's blue lights and stopped Defendant's vehicle. Thus, the only question is whether the stop was constitutional because Nabors had a reasonable suspicion, supported by specific and articulable facts, that criminal activity had occurred, was occurring, or would occur.

Although Officer Nabors was able to articulate facts that made him suspicious of Defendant's vehicle, Nabors was unable to articulate specific facts that would support a reasonable suspicion that any occupant of Defendant's vehicle had committed, was committing, or would commit a criminal offense. Although Nabors received a report that a vehicle had followed a woman into a trailer park and stopped in front of her house, the vehicle was not there when Nabors arrived approximately five minutes later. In addition, Nabors saw the vehicle leave the trailer park approximately five minutes after he arrived, so at most, Defendant's vehicle was only in the trailer park for about ten minutes. At the point that Nabors observed Defendant's vehicle, all he knew about the vehicle was that it followed a woman into the trailer park, parked in front of her residence for some period of less than five minutes, and then left the trailer park about five minutes after Nabors arrived. At this point, there was absolutely no basis for suspecting that Defendant had committed any criminal offense. In fact, to Nabors' credit, he essentially admitted that he had no reason to suspect that Defendant's vehicle had done anything illegal or that anyone had committed a crime that involved the vehicle.

Officer Nabors admitted that he did not observe any violation of the law when he saw Defendant's vehicle leave the trailer park. Thus, Nabors clearly had no reason to suspect that Defendant was committing a criminal offense at that time. Moreover, Nabors did not identify a single fact that led him to believe that Defendant was going to engage in criminal activity. Indeed, Nabors admitted that he did not stop Defendant's vehicle because of any suspected violation of the law and instead, he stopped the vehicle for the sole purpose of finding out why the vehicle had been in the trailer park.

In short, there are no specific and articulable facts in this case that would support a reasonable suspicion that criminal activity had occurred, was occurring, or would occur. In fact, Officer Nabors never even claimed that he had such a suspicion. Therefore, the stop of Defendant's vehicle was invalid under the Fourth Amendment and Article I, Section 7 and all evidence discovered as a result of the stop should have been suppressed. Accordingly, the judgment of the trial court must be reversed, and the case dismissed.