# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1999

FILED

March 23, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9805-CC-00126** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **DICKSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ALLEN W. WALLACE,** |
| **MICHAEL ALLEN PRICE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Certified Question; Search and Seizure) |

## ON APPEAL FROM THE JUDGMENT OF THE CIRCUIT COURT OF DICKSON COUNTY

FOR THE APPELLANT:

MICHAEL J. FLANAGAN
95 White Bridge Road #208
Nashville, TN 37205

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

DAN ALSOBROOKS
District Attorney General

ROBERT WILSON
Assistant District Attorney General
P.O. Box 580
Charlotte, TN 37036

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Michael Allen Price, pleaded guilty to one count of possession of LSD with intent to sell and one count of possession of marijuana with intent to sell. He reserved a certified question of law—whether sufficient articulable facts existed to justify a reasonable suspicion supporting an investigatory stop of Defendant's vehicle—which we now address. We conclude that the investigatory stop was based on specific and articulable facts such that the officer had reasonable suspicion that Defendant possessed illegal narcotics.

On September 19, 1997, officers seized 440 grams of marijuana and 50 squares, or "hits," of LSD from Defendant's person and vehicle. Officer Stewart Goodwin, the Dickson County narcotics officer who effected the seizure, provided the only testimony at the trial court's hearing on Defendant's Motion to Suppress. Based upon his testimony, we affirm the decision of the trial court to admit the seized evidence.

According to Officer Goodwin, he received a telephone call from an informant with whom he had previously worked to facilitate approximately twenty drug "buys" over the course of two years. Goodwin stated that every time the informant told him he had ordered drugs from a dealer, the informant had been correct, and Goodwin considered him reliable. On this occasion, the informant told Goodwin that he heard from a friend that Defendant dealt drugs. After consulting with Goodwin, the informant ordered a pound of marijuana and fifty hits of LSD, to be delivered on September 19, 1997.

The informant told Officer Goodwin that the dealer, a white male in his early twenties named Michael Price, would deliver the drugs with another male in a white vehicle with out-of-county plates to the Perfect Pig restaurant in White Bluff at 10:00 to 10:30 p.m. on September 19. Goodwin and two other officers waited for the vehicle, which appeared at 10:40 that evening, after the restaurant had closed. The vehicle, which Goodwin stated "exactly" fit the description given by the informant, entered the parking lot of the Perfect Pig, slowly traveled through the lot, and then exited onto Highway 70.

Officer Goodwin activated his blue lights and followed the vehicle, which did not yield to the officers for at least a mile, until it had reached the county line of Cheatham County. There is no question that after Goodwin performed the investigatory stop, he gathered sufficient probable cause to arrest Defendant. The sole issue certified to this Court is whether Goodwin possessed sufficient reasonable suspicion prior to activating his blue lights, thus initiating the Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968); Whren v. United States, 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes the 'seizure' of 'persons' within the meaning of [the Fourth Amendment].").

The United States Supreme Court in Delaware v. Prouse, 440 U.S. 648 (1979), stated,

> Except in those situations in which there is at least articulable and reasonable suspicion that . . . either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's

license and the registration of the automobile are unreasonable under the Fourth Amendment.

Id. at 663. In addition, when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

In State v. Pulley, 863 S.W.2d 29 (Tenn. 1993), our supreme court upheld the constitutionality of an investigatory stop of a vehicle based upon an informant's tip and concluded that traditional Jacumin criteria should be used to determine whether the tip is "sufficiently reliable" to support a finding of reasonable suspicion. Id. at 32 (referencing State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989) (holding that the Tennessee Constitution requires facts indicating an informant's basis of knowledge and veracity or credibility)).

As the United States Supreme Court expressed,

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 496 U.S. 325, 330 (1990). Recently, our supreme court observed that when applying this analysis to the area of informant's tips, "the two-pronged test of reliability [in Jacumin] need not be as strictly applied if the informant's tip is being used to establish reasonable suspicion rather than probable cause." State v. Simpson, 968 S.W.2d 776, 782 (Tenn. 1998).

In Jacumin, the court adopted the Aguilar-Spinelli test for magistrates determining whether probable cause exists to issue a search warrant. 778 S.W.2d at 436; see Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969). As modified for an investigatory stop, the test measures whether the tip was sufficiently reliable to permit the investigating officer to determine whether "reasonable suspicion" existed. Pulley, 863 S.W.2d at 32. The test requires the officer to have facts that establish (1) the informant's basis of knowledge of the information, and (2) circumstances indicating the veracity or credibility of the informant. Jacumin, 778 S.W.2d at 432. Furthermore,

> [c]ircumstances relevant to the evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him.

State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1992).

Within this framework, we review whether the informant's tip in this case was sufficiently reliable to support the officer's finding of reasonable suspicion to stop Defendant. "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Findings of fact by the trial court upon a motion to suppress will be upheld unless the evidence preponderates against them. Id. However, the application of law to these facts is a question of law, which an appellate court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Beare Co. v. Tennessee Dep't of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993)).

We find this case to be analogous to the recent case of State v. Keith, 978 S.W.2d 861 (Tenn. 1998), in which the supreme court affirmed, on interlocutory appeal, denial of the defendant's motion to suppress. Id. at 867. While the facts are not directly on point to the case at bar, we conclude that the result should be the same.

In Keith, a confidential informant who had previously given several reliable tips to police informed officers that the defendant and another man had been storing illegal narcotics at a precise location. Id. at 863. This confidential informant also provided a physical description of the men. Id. Three days later, an anonymous informant told police that persons at the same address "were involved in the possession and sale of illegal drugs." Id. The anonymous informant claimed that he saw drugs inside the residence within four days of the call and that "shortly before placing the call he observed marijuana in a red Honda CRX vehicle which was parked outside the residence and saw both suspects present at the residence." Id. Finally, this informant gave a physical description of both suspects that matched that given by the confidential informant. Id.

Officers corroborated portions of the information given by both informants by setting up surveillance at the home after each call. Id. They observed persons matching the physical description of the men leave the residence, get into the red Honda CRX, and drive away. Id. Officers followed the vehicle for a short distance before stopping it and ultimately seizing the narcotics. Id. at 863-64. The Keith court found that both prongs of the Aguilar-Spinelli-Jacumin test

were met and that reasonable suspicion by the officers was supported. Id. at 866-67.

Likewise, in this case we conclude both (1) that the informant's tip was sufficiently reliable to support a finding of reasonable suspicion, and (2) that Officer Goodwin corroborated enough of the information by direct observation to create actual reasonable suspicion based upon specific and articulable facts.

The tip satisfied the "basis of knowledge" prong of the Aguilar-Spinelli-Jacumin test because the informant had personally ordered specific types and quantities of drugs from Defendant, scheduled to be delivered at a certain location on a certain date at a certain time. The tip satisfied the "veracity or credibility" prong because the officer testified he had received reliable and accurate tips from this confidential informant approximately twenty times in the past.

With respect to independent corroboration of the tip, Officer Goodwin testified at the hearing on the motion to suppress that he observed a man matching the description given by the informant, accompanied by one passenger, driving a vehicle matching the description, at the precise location given, at the approximate time given. Furthermore, the Perfect Pig restaurant was closed for business at that time, and the suspect drove slowly through the parking lot and back onto the roadway for no apparent reason. As a matter of law, Officer Goodwin possessed sufficient reasonable suspicion to conduct an investigatory stop of Defendant.

Because the officer had reasonable suspicion to conduct an investigatory stop of Defendant, we affirm the trial court's denial of Defendant's motion to suppress. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE