IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2023 Session

**STATE OF TENNESSEE v. JENNIFER MICHELLE CHILDS**

**Appeal from the Criminal Court for Sumner County**
**No. 2021-CR-324   Dee David Gay, Judge**

_____

**No. M2022-01685-CCA-R3-CD**

_____

The Defendant, Jennifer Michelle Childs, was indicted in the Sumner County Criminal Court for driving under the influence ("DUI") and filed motions to suppress evidence and dismiss the indictment. The trial court held a hearing, ruled that the Defendant's warrantless arrest was illegal, and dismissed the indictment. The State appeals the dismissal, arguing that the remedy for an illegal arrest is suppression of any evidence obtained as a result of the arrest. Based upon the oral arguments, the record, and the parties' briefs, we agree with the State. Accordingly, the trial court's dismissal of the indictment is reversed, the indictment is reinstated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, Case Remanded**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Edward M. Williams and Eric Mauldin, Assistant District Attorneys General, for the appellant, State of Tennessee.

William L. Moore, Jr., Gallatin, Tennessee, for the appellee, Jennifer Michelle Childs.

**OPINION**

# FACTS

On November 1, 2019, Deputy Kyle Brandon Pierce of the Sumner County Sheriff's Department arrested the Defendant in her driveway for DUI, first offense, and possession of Schedule II and V drugs. In June 2021, the Sumner County Grand Jury indicted the Defendant for DUI, a Class A misdemeanor. The Defendant filed a motion to suppress evidence, contending that her warrantless arrest was illegal because she did not commit an offense in the officer's presence, no exigent circumstances existed to justify his entry onto her property, and he lacked probable cause for the arrest when the information he received was based on a citizen caller's report of a trespass. Subsequently, the Defendant filed a "Supplemental Motion to Suppress and Dismiss Indictment" in which she reasserted the arguments she made in the previous motion and claimed that the trial court should dismiss the indictment.

The trial court held a hearing on the motions on September 9, 2022. At the hearing, Deputy Pierce testified that at 10:17 a.m. on November 1, 2019, he was dispatched to 114 Harsh Lane "for a possible reckless driver" call. According to the call, a person saw a green Toyota pull into the driveway at 116 Harsh Lane, "[sit] there for a couple of seconds," and then drive across the property at 116 Harsh Lane and enter the driveway at 114 Harsh Lane. Deputy Pierce said, "The original caller observed that the vehicle had been driving in the middle of the roadway before entering the 116 address." Deputy Pierce did not know if the original call was a 911 call.

Deputy Pierce testified that he arrived at 114 Harsh Lane about five minutes later. A green Toyota was in the driveway, someone was sitting in the vehicle, and the engine was "running." The person in the car was sitting at an angle toward the center console, not facing straight ahead. Deputy Pierce pulled his police vehicle fifteen to twenty feet into the driveway, which was sixty to seventy-five feet in length. The blue light on his vehicle was not turned on, and the green Toyota could have left the driveway. However, the driver would have had to pull around Deputy Pierce's vehicle in order to leave.

Deputy Pierce testified that he walked to the driver's door of the Toyota. The Defendant was sitting in the driver's seat and was texting on her cellular telephone. Deputy Pierce stood beside her door for about two minutes to see if she would notice him. She did not, so he knocked on her window, which "kind of startled her a little bit." The Defendant rolled down her window, and Deputy Pierce began speaking with her. He noticed that she had "slightly" slurred speech, bloodshot eyes, and dilated pupils. He also smelled the odor of an alcoholic beverage emanating from the vehicle. He asked if the Defendant had been drinking, and she told him that "she had a drink the previous night." Deputy Pierce said that he asked if she drove across her neighbor's yard and that "it was more of a shrug and giggle, like, yeah, yeah, you know, I'm sorry about that."

Deputy Pierce testified that he asked if the Defendant would consent to field sobriety tests and that she said yes. He administered the horizontal gaze nystagmus and asked if the Defendant had any injuries or ailments that would interfere with additional field sobriety tests. The Defendant said she had multiple fractures in her feet and was taking multiple prescription medications. She told Deputy Pierce that she did not feel comfortable taking further tests due to the injuries in her feet, so he did not administer any other tests to her.

Deputy Pierce testified that he asked the Defendant "where she was coming from." The Defendant told him that she worked at night in Madison and that she was returning home from her job. Deputy Pierce said he thought the Defendant also told him that she worked at a bar. He asked to search her vehicle, and she gave consent. During the search, Deputy Pierce found "a bunch of pills that were not in prescription bottles." However, it was later determined that all of the pills had been prescribed to the Defendant. Deputy Pierce told the Defendant that he was going to take her into custody for suspicion of DUI, and he read an implied consent form to her. She consented to a blood test, so he transported her to Sumner Regional Hospital, where he watched a nurse collect a blood sample. The blood draw occurred about one hour, forty minutes after Deputy Pierce initially made contact with the Defendant. Deputy Pierce then transported the Defendant to the Sumner County Jail.

On cross-examination, Deputy Pierce testified that he considered his response to the original call to be "more of a welfare check" because "it's not normal to drive across somebody's yard." He did not know the Defendant lived at 114 Harsh Lane until he spoke with her. He acknowledged that he did not see her driving or in control of a motor vehicle and that she did not commit an offense or breach the peace in his presence. He also did not suspect her of committing a felony, attempting suicide, causing a traffic accident, or stalking. The Defendant's toxicology report showed that her blood alcohol content was 0.048 gram percent, and Deputy Pierce saw no evidence of reckless driving.

At the conclusion of the hearing, Defense counsel argued that the trial court should dismiss the case because none of the exceptions listed in Tennessee Code Annotated section 40-7-103(a), in which an officer can arrest a person without a warrant, applied in this case. The State argued that Deputy Pierce verified details given by the caller, that he was justified in making a brief investigatory stop, and that "DUI stops are notorious for their arrests without warrants because they're based on the officer's observations at the time that they make contact with these people."

On November 7, 2022, the trial court made oral findings of fact and ruled on the Defendant's motions. The trial court found that Deputy Pierce arrived at 114 Harsh Lane and observed a green Toyota in the driveway, as the caller had described. The trial court

further found that the Defendant was sitting in the vehicle with the engine running; that Deputy Pierce noticed an odor of alcohol emanating from the vehicle; and that he noticed the Defendant had slightly slurred speech, bloodshot eyes, and dilated pupils. The court found that the Defendant told the officer that she consumed alcohol the previous night, that she admitted driving the vehicle, and that she admitted accidentally pulling into the wrong driveway. The trial court noted, though, that Deputy Pierce did not see the Defendant driving the vehicle. The trial court then stated as follows:

> The law is pretty clear. There have been certain exceptions created for DUIs, but it applies when there's an accident and there's probable cause, but, as hard as I have looked, I can't find anything anywhere to disturb the rule of law that an officer can't make an arrest without a warrant if the misdemeanor is not committed in his presence.
>
> . . . .
>
> I can't see any way around the law that justifies this arrest. This offense was not committed in the presence of this particular officer, and under everything that I've read going way back into Tennessee jurisprudence there's nothing that will allow this arrest without a warrant. Therefore, the motion is granted and the case will be dismissed.

On November 9, 2022, the trial court entered an order, stating that it was granting both of the Defendant's motions and dismissing the indictment.

## ANALYSIS

The State appeals the trial court's dismissal of the indictment, arguing that the remedy for an illegal arrest is suppression of any evidence obtained as a result of the arrest. The Defendant contends that the trial court properly granted her motions to suppress evidence and dismiss the indictment. We conclude that the trial court erred by dismissing the indictment.

Initially, we note that the Defendant moved to suppress the evidence discovered during her warrantless arrest but that the trial court did not address the suppression of any evidence when it made its oral ruling or in the written order. Instead, the trial court only dismissed the indictment. We review a trial court's ruling on a motion to dismiss the indictment for an abuse of discretion. *State v. Harris*, 33 S.W.3d 767, 769-70 (Tenn. 2000). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the party

- 4 -

complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (internal quotation and citation omitted).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Generally, a warrantless search is presumptively unreasonable and, thus, violates constitutional protections. *See State v. Dotson*, 450 S.W.3d 1, 49 (Tenn. 2014). Evidence derived from such a search is subject to suppression unless the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). Eleven exceptions to the warrant requirement are listed in Tennessee Code Annotated section 40-7-103(a). One such exception occurs "[f]or a public offense committed or a breach of the peace threatened in the officer's presence." Tenn. Code Ann. § 40-7-103(a)(1). However, the proper remedy for an illegal arrest is suppression of the evidence seized as a result of the arrest, not dismissal of the indictment. *State v. Baker*, 966 S.W.2d 429, 432 (Tenn. Crim. App. 1997); *State v. Smith*, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989) ("Generally, an illegal arrest does not invalidate an indictment.").

Here, the trial court dismissed the case based on the trial court's conclusion that the Defendant's warrantless arrest was illegal when the Defendant did not commit the offense in the officer's presence. Therefore, we conclude that the trial court abused its discretion when it granted the Defendant's motion to dismiss the indictment.

## <u>CONCLUSION</u>

Based upon our review, the judgment of the trial court is reversed. The indictment is reinstated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
JOHN W. CAMPBELL, SR., JUDGE