# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 6, 2012 Session

## STATE OF TENNESSEE v. KEVIN JAMELLE BALDWIN

**Appeal from the Circuit Court for Obion County**
**No. CC-11-CR-45      William B. Acree, Jr., Judge**

**No. W2011-02383-CCA-R3-CD  - Filed May 10, 2012**

The defendant, Kevin Jamelle Baldwin, was charged with possession with intent to sell between ten and seventy pounds of marijuana after the narcotics were discovered in the trunk of his car during a traffic stop.  Thereafter, the defendant filed a motion to suppress, arguing that the stop and search of his vehicle were unconstitutional.  The trial court granted the defendant's motion and dismissed the indictment.  The State appeals the trial court's grant of the defendant's motion to suppress, and after review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellant, State of Tennessee.

Charles S. Kelly, Sr., Dyersburg, Tennessee for the appellee, Kevin Jamelle Baldwin.

## OPINION

## FACTS

At the suppression hearing, Officer Scott Watkins with the Union City Police Department testified that he was on duty, working a detail for the Governor's Highway Safety Office, on January 19, 2011.  As he was driving into town, Officer Watkins ended up behind the defendant's car.  He noticed that the defendant's car had a Jefferson County,

Kentucky, license plate and, with knowledge that a substantial number of drug arrests had come out of Jefferson County, Officer Watkins ran the defendant's license plate number. However, the computer system yielded no information on the license plate number. Officer Watkins did not follow the defendant's vehicle but, instead, parked on the right-hand side of a four-lane highway for traffic enforcement work.

Officer Watkins testified that, after a few minutes passed, he saw a tractor-trailer drive over the highway overpass, with the defendant's car following closely behind it. He described that the defendant's car was following so closely behind the tractor-trailer that all he could see of it was the rear end of the car and that it appeared the defendant's car was driving in the tractor-trailer's blind spot. Both vehicles were in the lane nearest the officer. Officer Watkins could not give an exact distance that the defendant was behind the truck because both vehicles were traveling in his direction over the overpass, and the defendant hit his brakes and drove "extremely slow" upon seeing the officer. Officer Watkins decided to pull the defendant over for "following too close." He stated that he "[p]robably" would have pulled the defendant over regardless of the Jefferson County plates because "all [he was] supposed to do in that four-hour block [was] traffic violations and traffic tickets to turn into the Governor's Highway Safety Office."

Officer Watkins testified that the defendant was driving a rental car and that he noticed a large suitcase in the backseat and tire compressor and tool kit on the floorboard. Officer Watkins noted that most rental car companies will repair the car if it has trouble and thus surmised that the defendant "didn't want to break down[.]" Officer Watkins also surmised that the defendant might have something large in the trunk because of his suitcase being in the backseat.

Officer Watkins testified that, while he was waiting for the defendant's license check to come back, he asked the defendant if he could search the car, which the defendant declined. Officer Watkins then informed the defendant that he was going to walk his drug dog around the car to do an "open-air sniff of the vehicle." The defendant "had a funny look to him" as if he might try to drive away, so Officer Watkins requested that he exit the car during the dog sniff. After being asked three times, the defendant finally exited the car. The drug dog alerted on the trunk, and a total of twenty, one-pound bags of high-grade marijuana were recovered. Officer Watkins did not get the status back on the defendant's driver's license until after the defendant had been arrested.

After the conclusion of the testimony and hearing the arguments of the parties, the trial court granted the defendant's motion to suppress. The court found that there was not sufficient evidence to establish a violation of the statute prohibiting following too closely in order for Officer Watkins to have pulled the defendant over and, thus, dismissed the

indictment.

## ANALYSIS

On appeal, the State argues that the trial court erred in granting the defendant's motion to suppress.

In ruling on the motion to suppress, the trial court stated as follows:

> What concerns me is the initial stop. The statutes provide[] the driver of a motor vehicle should not follow another more closely than is reasonable and prudent, having due regard for the speed of the vehicles and traffic and the condition of the highway. That's what concerns me. And we all know why he stopped the defendant, because he wanted to search for drugs. And we all know that you can have a pretext, you know, for stopping somebody because of some violation. But I'm concerned that there's sufficient evidence showing a violation. We do not have any evidence as to how far apart the truck and the defendant's vehicle were. We don't have any evidence as to what is reasonable and prudent. We don't have any evidence of the speed of the vehicle. There's no evidence upon what other traffic, if any, was on the highway. The condition of the highway is part of that statute, too. The Court will take judicial notice that the highway is in good condition. Those are the things that bother me . . . .
>
> . . . .
>
> I'm not concerned about the cite and release, I'm concerned about the reason for the stop, as to whether or not it's a lawful stop.
>
> . . . .
>
> The evidence in this case shows that Officer Watkins was parked on the highway commonly referred to as Everett Boulevard. He observed the defendant behind a truck, an 18-wheeler, I understand. The truck and the defendant were in the same lane of traffic. Both were headed north. The officer was unable to see or determine the distance, approximate distance between the two vehicles. There has been no evidence in the record as to the speed of the vehicles or what other traffic, if any, was on the highway.
>
> The Court reluctantly finds that the stop was illegal and the ensuing

search was also illegal.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" Keith, 978 S.W.2d at 865 (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." Id. (citations omitted).

One of those exceptions is when an officer makes an investigatory stop based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Ornelas v. United States, 517 U.S. 690, 696 (1996). If an officer observes a violation of a traffic law, the officer has an objective basis for stopping the vehicle. See, e.g., State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Levitt, 73 S.W.3d 159, 173 (Tenn. Crim. App. 2001). "An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention." State v. Orson Wendell Hudson, No. M2004-00077-CCA-R3-CD, 2005 WL 639129, at *3 (Tenn. Crim. App. Mar. 15, 2005) (citing Whren v. United States, 517 U.S. 806 (1996); Vineyard, 958 S.W.2d at 730).

-4-

Tennessee Code Annotated section 55-8-124(a) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway."

The State asserts that the grant of the motion to suppress was in error because Officer Watkins articulated reasonable suspicion for his stop of the defendant. Officer Watkins testified that the defendant's car was following so closely behind the tractor-trailer that all he could see of it was the rear end of the car and that it appeared the defendant's car was driving in the tractor-trailer's blind spot. Officer Watkins could not give a more specific estimate as to how far the defendant was behind the truck because both vehicles were coming toward him over the overpass, and the defendant hit his brakes and drove "extremely slow" upon seeing the officer.

The trial court made a finding of fact that there was no proof establishing the distance between the vehicles or the speed that they were traveling to support a determination that the defendant was following too closely, and we are to uphold that finding unless the proof in the record preponderates otherwise. We note that the proof in this case is lacking compared to that in Orson Wendell Hudson, 2005 WL 639129, at *3, in which a panel of this court upheld a trial court's denial of a defendant's motion to suppress based on testimony from the officer in that case that the defendant's car was less than one car length behind the vehicle in front of it. In addition, appellate review in Orson Wendell Hudson tended toward a conclusion that the stop was constitutional in light of the trial court's findings in that case; whereas, here, appellate review tends toward a conclusion that the stop was unconstitutional in light of the trial court's findings. Although the trial court in this case did not explicitly state that it did not believe Officer Watkins' testimony that the defendant was following too closely, it is our view that it is evident from the trial court's findings that the court discounted the officer's testimony as the court felt there was no proof as to the distance between the cars, the speed of the vehicles, or whether there were any vehicles in the area to support Officer Watkins' assertion.[1] The proof in the record does not preponderate against the trial court's findings.

---

[1] We note that the State asserts in its brief that the trial court took judicial notice of the speed limit on the highway from which the approximate speed of the defendant's car could be determined. However, the statement upon which the State relies occurred when the trial court was giving an example of sufficient evidence for stopping a driver for speeding where the officer testified the driver was traveling sixty-five miles per hour on the same road and said, "I think it's 50 there now[.]" We cannot view the trial court's off-hand remark in giving an illustration as taking judicial notice.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's grant of the defendant's motion to suppress and dismissal of the indictment.

_____
ALAN E. GLENN, JUDGE