IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 10, 2012 Session

## STATE OF TENNESSEE v. CHARLES W. WHITE, SR.

**Direct Appeal from the Circuit Court for Henderson County**
**No. 11008-1     Roy B. Morgan, Jr., Judge**

**No. W2011-02301-CCA-R3-CD  - Filed August 31, 2012**

The defendant, Charles W. White, Sr., was convicted of driving under the influence ("DUI") by a Henderson County Circuit Court jury and sentenced to eleven months and twenty-nine days, with all but forty-eight hours suspended. His driver's license was also suspended for one year for violation of the implied consent law. On appeal, he challenges the trial court's denial of his motion to suppress the stop of his vehicle. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Ricky L. Wood, Parsons, Tennessee, for the appellant, Charles W. White, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was indicted for DUI and speeding after he was pulled over for speeding by a Lexington Police Department officer. He filed a motion to suppress the stop of his vehicle, arguing that the officer did not have reasonable suspicion or probable cause to pull him over.

At the suppression hearing, Officer Brad Wilson of the Lexington Police Department testified that, on July 5, 2010, the department received a call from a citizen reporting a vehicle that was traveling in a reckless manner. The caller was following the reckless vehicle, later identified as being driven by the defendant, and giving continuous updates to the dispatcher, including the license plate number. Officer Wilson located the caller's vehicle and had the dispatcher advise the caller to pull to the side of the road so he could follow the defendant's vehicle.

Officer Wilson observed the defendant's vehicle stop at a stop sign and then accelerate to a speed of at least forty-two miles per hour. He explained that he determined the speed of the defendant's vehicle because he was driving forty-two miles per hour and the defendant was driving faster than he was driving. He activated his blue lights because the speed limit was thirty miles per hour. The defendant stopped his vehicle, and Officer Wilson advised him that he was stopped for speeding.

Asked about the use of pacing as a method for determining a vehicle's speed in a case like the present one, Officer Wilson explained that "[w]hen you're pacing a vehicle on a continuous plane, 300 feet is an advised policy that we use. But if someone is obviously accelerating over the speed limit, . . . we go ahead and stop them as soon as the threat is there." On cross-examination, Officer Wilson recalled that the road he was following the defendant on was a paved roadway on a downhill incline and curve to the right. He said that he followed the defendant for approximately 200 feet, and although he could not recall how long he followed the defendant, he agreed that he would not be surprised if the elapsed time was twenty-eight seconds.

Asked if he was able to pace the defendant at forty-two miles per hour after following him for twenty-eight seconds over a few hundred feet, Officer Wilson responded, "I did not pace him. He was going over 30 miles per hour and at least 42 miles per hour, because I was going that fast and he was going away from me." Officer Wilson admitted that he did not activate his radar gun to determine the defendant's speed. However, he recorded the events leading up to and including the stop from the camera in his patrol car.

Clint Sanders, a registered land surveyor, testified that he watched the video of Officer Wilson following the defendant and personally went out and measured the distance on the particular stretch of highway in question and prepared a plat showing the "horizontal and slope distance" as well as "the elevation and the rise and fall -- slope of the road." He also located power poles along the stretch of highway that were visible in the video and measured the distance between the poles. Sanders explained that there is a mathematical formula to determine the speed of a vehicle based on distance and time. Using the formula, he calculated the defendant's average rate of travel during three different segments along the

road by documenting when the defendant's vehicle passed various power poles, and he determined that the defendant's vehicle could not have exceeded thirty miles per hour. On cross-examination, Sanders acknowledged that he could not determine the defendant's exact speed during any of those segments, only the average rate of travel for each segment.

The trial court denied the defendant's motion to suppress, and he was subsequently convicted after a trial of DUI but was found not guilty of speeding. Both Officer Wilson and Clint Sanders testified at the trial consistently to their testimony at the suppression hearing.

## ANALYSIS

The defendant argues that the weight of the evidence at the suppression hearing preponderates against the trial court's finding that he was speeding to justify the stop of his vehicle by Officer Wilson and his subsequent conviction for DUI and loss of driver's license.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" Keith, 978 S.W.2d at 865 (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or

seizure was conducted pursuant to an exception to the warrant requirement." Id. at 865 (citations omitted).

One of those exceptions is when an officer makes an investigatory stop based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Ornelas v. United States, 517 U.S. 690, 696 (1996). If an officer observes a violation of a traffic law, the officer has an objective basis for stopping the vehicle. See, e.g., State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Levitt, 73 S.W.3d 159, 173 (Tenn. Crim. App. 2001).

In denying the defendant's motion to suppress, the trial court found as follows:

> Now, the issue is whether . . . this city police officer observed a traffic offense and had a reasonable suspicion to initiate the stop. This is not a trial on the merits of the case. The question is not whether a Tennessee court would have found this defendant guilty of a traffic infraction; that's not the question today. The question is whether the officer had that probable cause or a reasonable suspicion that a violation had occurred.

> Defense counsel points out, you know, the case you referred to, it deals with the credibility of witnesses. There's been no challenging of credibility or believability today of any of the witnesses that have testified, expert or the officer. And that is something that is pointed out by defense counsel himself when [h]e made his argument. This expert has testified and has given basically an average speed. His opinion as to an average speed. The officer testified the stop [was] based on 42 miles an hour, at least.

> Now, you've got to remember the simple approach that I look to using common sense and everyday experience in life. He says I'm behind the vehicle. I know he was at least doing 42 . . . miles an hour because he was still pulling away from me. For example, if I were behind defense counsel or the State on the interstate and I'm doing 75, and you zip by me, I'd say that vehicle is doing more than 75, which I'm already five miles over the speed limit. I don't have to do any pacing; I just know you're pulling away from me based upon the speed.

> So that's a very simple approach the officer took. He didn't try to

-4-

describe it any other way. And it wasn't an excessive speed in such a manner. It wasn't 60, 70 or 80 [i]n a 30 mile an hour zone. It was just -- his opinion was, based on him still pulling away, and he was doing 42, he was doing at least that or more.

We're looking at a video versus on-site opinion. We're looking at over three football fields in length as far as the time based on the expert's opinion of 1,019 to 1,050 feet. We're looking at a formula based upon or calculated per the video. And the expert opinion is for the trier of fact to determine. They don't have to accept an expert's opinion. That was based on skills, experience, knowledge, training, the facts given. That's up to the trier of fact.

So based upon what I've heard today, I find that there is probable cause and/or a reasonable suspicion to make based upon the 42 mile an hour speed. So my ruling is to deny the motion to suppress.

Upon review, we cannot conclude that the evidence preponderates against the trial court's findings. We initially note that Clint Sanders was never tendered and accepted as an expert in land surveying. Even if he were so accepted, we question whether his testimony was outside the scope of such expertise given he testified that a land surveyor's job consisted of measuring "[d]istances and angles," but the essence of his testimony concerned mathematical calculations he made.

In any event, Sanders testified as to his opinion of the defendant's average speed over the particular stretch of highway by attempting to observe from the video recording from Officer Wilson's car the moment the defendant's vehicle passed certain power poles and the time it took for the defendant's vehicle to do so. Contrary to the average speed determined by Sanders, Officer Wilson testified that the defendant was driving, at some point, at least forty-two miles per hour based on the officer's following behind the defendant at that speed and that the defendant "was going faster than [him]." Our supreme court has noted that "'[e]xpert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are generally regarded as purely advisory in character[.]'" Rich v. Tenn. Bd. of Med. Exam'rs, 350 S.W.3d 919, 927-28 (Tenn. 2011) (quoting Cocke Cnty. Bd. of Highway Comm'rs v. Newport Util. Bd., 690 S.W.2d 231, 235 (Tenn. 1985) (quoting Am. Jur. 2d Expert and Opinion Evidence § 138 (1967))). The court continued that "'the [triers of fact] may place whatever weight they choose upon such testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable.'" Id. The trial court obviously found that Officer Wilson's first-hand observation of the defendant's driving was more accurate than Sanders' calculations made from a video recording taken from a perspective in which it would be impossible to

determine the precise moment in which the defendant's vehicle passed the designated markers in order to make such calculations. The evidence does not preponderate against the trial court's finding.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the denial of the defendant's motion to suppress.

_____
ALAN E. GLENN, JUDGE