# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 27, 2012

## STATE OF TENNESSEE v. KAILYN LOREN MCKEOWN

**Appeal from the Criminal Court for Hamilton County**
**No. 278639     Don W. Poole, Judge**

---

**No. E2011-02209-CCA-R3-CD - Filed September 25, 2012**

---

The defendant, Kailyn Loren McKeown, entered a best interest plea to one count of driving under the influence ("DUI"), *see* T.C.A. § 55-10-401, and reserved a certified question of law concerning the propriety of her detention and arrest. Tenn. R. Crim. P. 37(b). Determining that the evidence preponderates against the trial court's findings as they relate to the scope of the certified question of law, we reverse the judgment of the trial court and dismiss the charge.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS. JR., JJ., joined.

Brian L. O'Shaughnessy, Chattanooga, Tennessee, for the appellant, Kailyn Loren McKeown.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William H. Cox, District Attorney General; and Bates Bryan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the April 19, 2011 hearing on the motion to suppress, Chattanooga Police Department Officer Joshua Brewer testified that on August 7, 2010, he responded to a report of a violent argument between a man and a woman at a Chattanooga bar. He arrived to see "a black vehicle, a sedan of some kind" pulling out of the parking lot of the bar. Witnesses in the parking lot pointed to the vehicle, indicating that the arguing couple were driving away. Officer Brewer saw the "black vehicle" turn from the parking lot and travel the wrong way up a one-way street. Instead of pursuing the vehicle the wrong way up the street, Officer

Brewer decided to intercept the vehicle via a nearby parallel street to the main thoroughfare. Upon entering the main thoroughfare, Officer Brewer observed a "dark vehicle" that he believed to be the same "black . . . sedan" originally observed in the bar parking lot. He followed the vehicle for a few minutes and observed that the driver "momentarily straddled the [center turn] lane" before continuing for a few more blocks down the street. The driver of the vehicle then signaled to make a left turn and turned down a side street. Officer Brewer initiated his blue lights and stopped the vehicle based upon his belief that the driver and passenger were those involved in the reported altercation at the bar.

Officer Brewer testified that, as soon as he stopped the vehicle, he realized that the driver and passenger were two women and obviously not his "domestic violence" suspects. Nevertheless, he approached the vehicle and smelled alcohol "as soon as [he] walked [] to the car." Officer Brewer questioned the defendant, who was driving the vehicle, about the vehicle's straddling the center turn lane. The defendant explained to Officer Brewer that she was unfamiliar with the area and had hesitated to make an earlier turn. Officer Brewer then asked the defendant for her driver's license and insurance documents "to insure that she was okay to continue driving." Officer Brewer testified that the defendant "otherwise seemed normal" but that "her [] eyes were red and glassy." The defendant admitted drinking one glass of wine and eating some pizza between 9:30 pm and 11:30 p.m., within minutes of the stop.

Officer Brewer testified that the vehicle did not swerve, weave, or "swing wide [or] turn early," common indicia of impaired drivers, prior to his making the stop. Likewise, he testified that he "didn't notice any drifting" from lane to lane in the defendant's operation of the vehicle. He stated that he observed "none of the textbook [cues]" of impaired driving prior to making the stop. Further, other than the defendant's "glassy" eyes, the smell of alcohol, and the defendant's slowness in finding her insurance documents, Officer Brewer observed that the defendant followed his instructions, did not sway while standing outside her vehicle, and did not exhibit any slurred speech during the initial investigation.

Officer Brewer testified that the defendant exited her vehicle, which was parked on a hill, wearing high heels, and that she did not need assistance. He recalled asking the defendant to "walk across the street" to a nearby parking garage because the garage "ha[d] a much more level surface" than the street. Officer Brewer acknowledged that the defendant "seemed okay" during his initial questioning and instructing her regarding the sobriety tests. At one point, the defendant, who was now barefooted, "stepped in the middle of the line, when she was instructed to step on the edge" during the heel to toe test. He admitted, however, that the defendant did not "stumble off to the side or anything." He testified that the defendant swayed slightly during the one-legged stand test and counted for 44 seconds, which was "too long,' during the "Romberg test where you tilt your head back

and count." Officer Brewer testified that these imperfections, the odor of alcohol, and the defendant's "slow[ness] . . . to process the information" provided probable cause to arrest the defendant for DUI.

The video recording of the stop reveals that Officer Brewer pursued the defendant's vehicle for approximately one minute before activating his blue lights to stop the defendant. Before the emergency equipment is activated, however, the video clearly shows that the defendant's vehicle is a red Saturn coupe rather than a black sedan. Within a minute of stopping the defendant, Officer Brewer realized that the defendant and her female companion were not the domestic violence suspects. The recording confirms Officer Brewer's testimony that the defendant took some time, approximately three minutes, to locate her proof of insurance. Within three minutes of asking the defendant to leave her vehicle, Officer Brewer directed the defendant to a nearby parking lot that was more level to administer field sobriety tests. After approximately six minutes of questioning during which the defendant admitted finishing a glass of wine now 30 minutes earlier, the defendant performed field sobriety tests, lasting nine minutes. Then Officer Brewer said, "You've had too much to drink. If I do my job I'm gonna have to DUI you. I don't think you're falling down drunk by any means, but you have had too much to be driving." Within a minute, Officer Brewer arrested the defendant.

In written findings, the trial court found that the officer realized he had stopped the "wrong vehicle" after approaching the defendant's vehicle. The trial court also found that "the defendant did not weave, swerve, drift, or swing wide or early." Thus the trial court found that, prior to the stop, the officer observed no indicia of impaired driving and that the only basis for the stop was the officer's belief that the people in the vehicle were those involved in the domestic violence incident. Significantly, the trial court noted, "The defendant does not contend that the officer did not have reason to stop her. . . . The defendant does not challenge the reasonableness of the officer's belief that her vehicle was the one he was pursuing to investigate the domestic-violence report." The trial court further found that the video recording and officer's testimony concerning the field sobriety tests indicated that "there were a few flaws, including slowness" in the defendant's performance of the testing.

In overruling the motion to suppress, the trial court ruled that Officer Brewer had reasonable suspicion to stop the defendant's vehicle because he believed it to be the one involved in the domestic violence report. The court ruled that, upon realizing that he had stopped the wrong vehicle, reasonable suspicion for continued detention existed based upon Officer Brewer's smelling alcohol and observing the defendant's "glassy eyes." The court further ruled that the defendant's glassy eyes, slowness, and flaws in performing the field sobriety tests all provided probable cause to arrest the defendant for DUI.

Following the trial court's denial of a motion to suppress, the defendant entered a best interest plea to DUI. She also reserved with the consent of the State and the trial court three certified questions of law that are dispositive of the case:

> (1) After determination by Officer Brewer that he had pulled over the incorrect car for a possible domestic assault call, did he have reasonable suspicion enough to justify a continued seizure of [the defendant]?
>
> (2) Upon completion of interrogation of [the defendant], including confirmation that she had a valid driver's license and proof of insurance, did Officer Brewer have reasonable suspicion enough to justify field sobriety tests?
>
> (3) Whether Officer Brewer had probable cause to justify an arrest upon completion of the field sobriety tests?

Discerning that these questions were properly certified pursuant to Tennessee Rule of Criminal Procedure 37(b), we will examine the trial court's ruling on the motion to suppress.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See, e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation carried the burden of demonstrating the applicability of an exception to the warrant requirement, s*ee, e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that

implicates the protection of both the state and federal constitutions); *Keith*, 978 S.W.2d at 865. The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2002). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

Relevant to the officer's subsequent arrest of the defendant, we note that "[p]robable cause in the context of a warrantless arrest 'exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense."'" *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000) (quoting *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))).

In the present case, the defendant did not contest in the trial court or before this court via the certified questions the propriety of the initial stop of her vehicle based upon Officer Brewer's belief that the defendant's vehicle was the one involved in the domestic violence incident. That being said, we note that the video recording of the stop indicates that Officer Brewer followed the defendant's vehicle on a well-lit street through downtown Chattanooga. The video recording further indicates that the initial pursuit of the vehicle began from some distance, making it initially unclear the color and body style of the defendant's vehicle. The trial court found that the defendant committed none of the typical impaired driving cues throughout the pursuit of her vehicle. Thus, we agree with the trial court that Officer Brewer's belief that the defendant's vehicle was the one suspected to be involved in the domestic violence incident provided the sole basis for stopping the vehicle.

Officer Brewer's video recording reveals, however, that the defendant did not drive "a black vehicle, a sedan of some kind" as he testified that he observed at the bar. Indeed, before Officer Brewer initiated his blue lights, the video recording clearly shows that the defendant drove a red Saturn coupe – not "a black vehicle, a sedan of some kind."

In our view, the video recording of the pursuit belies Officer's Brewer's testimony that he believed the defendant's car was the one involved in the domestic violence incident. Prior to activating his blue lights, it is obvious that the defendant's red coupe was not the suspected vehicle. Accordingly, had it been properly raised, we would conclude that no reasonable suspicion existed to justify the stop of the vehicle and that any subsequent observations by the officer – the smell of alcohol or the defendant's "glassy eyes" – were not legally discoverable. *See State v. Guy Alvin Williamson*, __ S.W.3d __, slip op. at 17 (Tenn. May 31, 2012) (noting that "[a]n observation occurring after a [stop] 'cannot retroactively make th[e officer's] action objectively reasonable'") (citations omitted).

As we have stated, however, the defendant does not challenge the initial stop of her vehicle – she only challenges her detention after Officer Brewer realized he had stopped the "incorrect car." Thus, we are constrained in our review by the certified questions as presented.

With that being said, the evidence on point does preponderate against the trial court's findings. The defendant's certified question part three posits that the officer had no probable cause to arrest the defendant following the field sobriety tests. Upon review of the video, we agree. In our view, the officer failed to articulate probable indicia of DUI, and the defendant's performance on the field sobriety tests adds little or nothing to the equation. We hold, therefore, that the arrest was not supported by probable cause.

Accordingly, we reverse the judgment of the trial court and order the charge dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE