IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

## STATE OF TENNESSEE v. MARK ROLLINS

**Appeal from the Circuit Court for Rutherford County
No. M-73925    David Bragg, Judge**

---

### No. M2016-00162-CCA-R3-CD – Filed August 10, 2016

---

The defendant, Mark Rollins, pleaded guilty to first offense driving under the influence of an intoxicant and reserved as a certified question the propriety of the vehicle stop leading to his arrest.  Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Allen R. Daubenspeck, Murfreesboro, Tennessee, for the appellant, Mark Rollins.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Shawn D. Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Rutherford County Grand Jury charged the defendant with alternative counts of driving under the influence of an intoxicant ("DUI") and driving with a blood alcohol concentration of .08 percent or more ("DUI per se").  On October 6, 2015, the defendant filed a motion to suppress evidence of his intoxication, contending that the traffic stop which led to his arrest constituted an illegal seizure.

The trial court apparently conducted an evidentiary hearing on the motion to suppress on October 16, 2015, although no transcript of the hearing appears in the record.  The affidavit of complaint supporting the defendant's August 27, 2014 arrest contained the sworn statement of Murfreesboro Police Department ("MPD") Officer Ricky Haley, which stated as follows:

Affiant makes oath that on the above date, he assisted MPD Officers Skyler Harris and Josh Borel with a traffic stop on Memorial Blvd at East Clark Blvd in reference to a vehicle's failure to signal before making a turn. Affiant made contact with the driver and identified him as MARK N. ROLLINS. Mr. Rollins was observed to have slurred speech, bloodshot eyes, was unsteady upon his feet, and had an obvious odor of an intoxicant emitting from his person. Affiant conducted field sobriety tests, to which, Mr. Rollins was unable to perform as demonstrated and explained. Therefore, affiant is charging MARK N. ROLLINS with DRIVING UNDER THE INFLUENCE.

The trial court denied the defendant's motion to suppress, concluding that the defendant violated "a provision of the traffic code by failing to give a signal" and that the arresting officers "had probable cause to believe a traffic violation had occurred" and accordingly had "probable cause to seize the [d]efendant."

Following the trial court's denial of the motion to suppress, the defendant pleaded guilty to DUI, and the charge of DUI per se was dismissed. The defendant also reserved, with the consent of the State and the trial court, a certified question of law that is dispositive of the case:

Whether the traffic stop was supported by articulable reasonable suspicion that a crime was being committed or probable cause that a traffic offense had occurred, thus legally justifying the initial seizure of the defendant?

Discerning that this question was properly certified pursuant to Tennessee Rule of Criminal Procedure 37(b), we will examine the trial court's ruling on the motion to suppress.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that

evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See*, *e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation had the burden of demonstrating the applicability of an exception to the warrant requirement, *see, e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *Keith*, 978 S.W.2d at 865. The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). "[P]robable cause exists 'when at the time of the [seizure], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *State v. Dotson*, 450 S.W.3d 1, 50 (Tenn. 2014) (quoting *State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012)).

On appeal, the defendant does not dispute his failure to use a turn signal when making a turn in his vehicle. Instead, he argues that the Murfreesboro City Ordinance on which MPD officers relied when stopping his vehicle does not specify when a driver is required to use a turn signal. We disagree.

The applicable city ordinance states as follows:

No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code § 32-720, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

Murfreesboro, TN, City Ordinance § 32-721(A). The subsections that follow further specify the manner in which a driver must signal:

(B) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

(C) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

(D) The signals provided for in subsection (F) shall be used to indicate an intention to turn, change lane, or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear, or flashed to inform operators of other vehicles approaching from the rear of the intent of a leading vehicle to make a turn.

(E) Any stop or turn signal when required herein shall be given either by means of the hand and arm or by signal lamps, except as otherwise provided in subsection (F).

(F) Any motor vehicle in use on a highway shall be equipped with, and required signal shall be given by, signal lamps when the distance from the center of the top of the steering

post to the left outside limit of the body, cab or load of such motor vehicle exceeds twenty-four inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load thereof exceeds fourteen feet. The latter measurement shall apply to any single vehicle, also to any combination of vehicles.

*Id.* § 32-721(B)-(F).

The language of the city ordinance is clear that drivers are required to use turn signals when making a turn: "No person shall so turn any vehicle *without giving an appropriate signal* in the manner hereinafter provided." *Id.* § 32-721(A) (emphasis added). The phrase "in the manner hereinafter provided" and the phrase "when required" in subsection (B) do not indicate that turn signals are *only* to be used in the situations mentioned in subsections (B) through (F); instead, those subsections are designed to further clarify the distance and manner in which the turn signal is to be used in specific situations.

Because the defendant violated a city ordinance by failing to use his turn signal, MPD officers had probable cause to stop his vehicle. Accordingly, we affirm the trial court's denial of the motion to suppress, and the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE