IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 19, 2017 Session

**STATE OF TENNESSEE v. RICHARD EUGENE REED**

**Appeal from the Criminal Court for Knox County**
**No. 103209      Scott Green, Judge**
**Mary Beth Leibowitz, Judge**

**No. E2017-00114-CCA-R3-CD**

The Defendant, Richard Eugene Reed, was convicted by a Knox County Criminal Court jury of possession with intent to sell 0.5 gram or more of cocaine in a drug-free school zone, a Class A felony; possession with intent to deliver 0.5 gram or more of cocaine in a drug-free school zone, a Class A felony; possession with intent to sell 0.5 gram or more of cocaine within a drug-free childcare zone, a Class B felony; possession with intent to deliver 0.5 gram or more in a drug-free childcare zone, a Class B felony; possession of a firearm during the commission of a dangerous felony, a Class D felony; and unlawful possession of a weapon by a convicted felon, a Class D felony. *See* T.C.A. §§ 39-17-417 (2010) (amended 2012, 2014) (possession of 0.5 gram or more of cocaine with intent to sell or deliver), 39-17-432 (2014) (drug-free school zone and drug-free childcare zone enhancement), 39-13-1324 (2010) (amended 2012, 2014) (possession of firearm during commission of a dangerous felony), 39-17-1307 (2014) (amended 2017) (unlawful possession of a weapon by a convicted felon). The trial court merged the drug-related convictions and sentenced the Defendant to an effective twenty years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions and (2) the trial court erred in denying his motion to suppress. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Jr. (on appeal) and Forrest Wallace (at trial), Knoxville, Tennessee, for the appellant, Richard Eugene Reed.

Herbert H. Slatery III, Attorney General and Reporter; Katherine A. Redding, Assistant Attorney General; Charme Allen, District Attorney General; and Sean McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from a July 5, 2011 warrantless search of the apartment shared by the Defendant and Donna Garrett and the seizure of evidence found during the search. The Defendant filed a pretrial motion to suppress the seized evidence, alleging that the warrantless search was unconstitutional. The Defendant argued that neither he nor Ms. Garrett consented to the search and that although Ms. Garrett's daughter, Junisha Garrett,[1] consented to a search, Junisha was without legal authority as a minor to consent. The Defendant asserted that all evidence obtained during the search should be suppressed as fruit of the poisonous tree.

## SUPPRESSION HEARING

At the suppression hearing, Knoxville Police Officer Jeff Damewood testified that on July 5, 2011, he responded to the scene of a reported attempted robbery and a shooting near the apartment shared by the Defendant and Ms. Garrett. Officer Damewood stated that witnesses to the robbery and shooting identified a house that the suspects entered. Officer Damewood said that the house contained two apartments, one on the first floor and one on the second floor. Officer Damewood said that he first entered the first floor apartment, that it was empty, and that he knocked on the door to the upstairs apartment. Officer Damewood stated that two women answered the door, that the women said they were alone in the apartment, and that he asked the women if he could search the apartment to look for the suspects. Officer Damewood said that the women consented to the search and that he and other officers entered the apartment.

Officer Damewood testified that he searched the master bedroom, that he entered the bedroom closet, and that he saw an open box of "baggies" on a shelf. Officer Damewood stated that he could see inside the box and that one of the baggies contained a white substance, which he thought was crack cocaine. Officer Damewood said that he did not touch the box or any of the baggies and that he continued searching the master bedroom for the suspects. Officer Damewood stated that the suspects were not inside the apartment. Officer Damewood said that he told the supervising officer at the scene, Officer Coker, about the baggies inside the master bedroom closet.

---

[1] Because Ms. Garrett and Junisha Garrett have the same surname, we refer to Junisha Garrett by her first name for clarity.

Officer Damewood testified that Ms. Garrett rented the apartment and that Ms. Garrett arrived home as the search for the suspects ended. Officer Damewood stated that Ms. Garrett said she shared the apartment and the master bedroom with the Defendant and that Ms. Garrett consented to a subsequent search of the apartment.

Officer Damewood testified that he reentered the master bedroom closet and that he seized the box of baggies. Officer Damewood stated that he found a gun, cash, ammunition, and a second box of baggies inside a shoebox in the closet. Officer Damewood stated that he found a plate containing white residue and razor blades under the bed and that he found the Defendant's driver's license and offender identification card on a bedside table.

Officer Damewood testified that officers saw the Defendant in an alleyway near the house and arrested him. Officer Damewood stated that he did not know the Defendant lived in the apartment before entering and that he learned the Defendant was on probation after finding the Defendant's offender identification card.

Officer Damewood testified that baggies were generally used to package drugs for selling and that seeing the box of baggies on a shelf inside the closet was suspicious. Officer Damewood stated that the shelf was below eye level and that he could see inside the box. Officer Damewood said that the master bedroom door was not locked.

Shondia Grimes testified for the defense that she was Ms. Garrett's cousin and that the Defendant was Ms. Garrett's boyfriend. Ms. Grimes stated that she was in the apartment with Junisha and that Junisha was age fifteen or sixteen at the time. Ms. Grimes said she heard a knock at the door, that she and Junisha answered the door, and that she saw police officers with their guns drawn standing outside. Ms. Grimes stated that the officers said they were looking for suspects from a shooting and asked if anyone was inside the apartment. Ms. Grimes stated that she told the officers the suspects were not in the apartment but that the officers asked if they could search the apartment. Ms. Grimes said that she told the officers she did not live in the apartment, that she could not consent to a search, and that the officers eventually went inside the apartment. Ms. Grimes stated that she did not know if Junisha allowed the officers inside.

Following the hearing, the trial court denied the Defendant's motion to suppress. The court found that Junisha consented to the initial search and that no legal authority showed that a "teenage person cannot give permission to search or enter an apartment." The court found that after Officer Damewood observed what he believed was crack cocaine in plain sight, officers obtained consent from Ms. Garrett for an additional search. The court determined that the searches were reasonable under the totality of the circumstances.

At a later date, the Defendant renewed his motion, requesting permission to present the testimony of Junisha. At this time, the trial court judge who denied the Defendant's initial motion to suppress had retired. The following exchange occurred between the subsequent trial court judge and the Defendant's trial counsel:

THE COURT: I'm going to respectfully deny your motion, [Counsel]. . . . [I]f you want to build your record and make an offer of proof, I'm sure my court reporter would let you put that witness on and solicit what – and elicit what that witness would testify to. But I think the General is correct if the motion has been heard, the law of the case is that the search is good, and I'm not going to reopen it. Okay.

[Counsel]: I understand. But I would like the opportunity to tender [Junisha's] testimony.

THE COURT: I'll do that. *I won't be in here when that happens*, but if you want to talk to [the court reporter], I'm sure she would accommodate you, as long as you're not too long with it. (Emphasis added.)

Junisha testified that she lived in the apartment with Ms. Garrett and the Defendant and that she was in the apartment with Ms. Grimes on July 5, 2011. Junisha stated that she heard a knock at the door, that "more than five" officers were at the door, that the officers said they were looking for suspects, and that she told the officers she and Ms. Grimes were alone. Junisha said that the officers asked whether she lived in the apartment and that she told the officers she lived there with her mother. Junisha stated that the officers asked to enter the apartment, that Ms. Grimes did not give the officers permission and that she told the officers "[she] was going to call [her] mom." Junisha said that the officers asked her and Ms. Grimes to stay on the porch and that the officers went inside the apartment. Junisha stated that she was scared and that she and Ms. Grimes were not allowed to leave.

Junisha testified that she did not consent to the officers entering the apartment, that she only said she would "call [her] mom," and that the officers had completed the search by the time Ms. Garrett arrived. Junisha stated that she was not related to the Defendant, that the Defendant had lived in the apartment since 2009, and that the Defendant had stayed in the apartment "every night." Junisha said that she knew the Defendant was on probation, that she did not know the house was subject to a search at any time because the Defendant lived there, and that she did not know the Defendant owned a gun.

The trial court entered an order denying the Defendant's motion to suppress after the defense presented Junisha's testimony.

# TRIAL

Officer Damewood testified that he went to the scene of a robbery and shooting near the Defendant's apartment and that witnesses identified a house the witnesses saw the suspects enter. Officer Damewood stated that the house contained two apartments, that he and other officers entered one of the apartments, and that no one was inside. Officer Damewood stated that he knocked on the door to the second apartment, that two women answered the door, and that the women said they were alone. Officer Damewood said that Ms. Garrett rented the apartment and that one of women who answered the door was Ms. Garrett's daughter. Officer Damewood stated that he asked the women if he could search the apartment for the suspects and that the women allowed the officers inside. Officer Damewood stated that he searched the master bedroom, that he went in the closet, and that he saw an open box of "sandwich baggies." Officer Damewood said that he did not touch the box, that he looked inside, and that he saw crack cocaine. Officer Damewood stated that he continued searching the bedroom, that he looked under the bed, and that he saw a "standard dinner plate" containing white residue and two razor blades. Officer Damewood said that the suspects were not in the apartment but that Ms. Garrett arrived home from work when the search ended.

Officer Damewood testified that Ms. Garrett consented to an additional search, that he returned to the master bedroom closet, and that he seized the box of baggies and crack cocaine. Officer Damewood said that he found a Nike shoebox inside the closet and that the label on the shoebox depicted a pair of black, size twelve "Air Force" athletic shoes. Officer Damewood stated that he opened the shoebox and found sandwich baggies, cash, scissors, a firearm, and ammunition. Officer Damewood stated that he seized the plate containing white residue and razor blades from under the bed and that he found a wallet containing the Defendant's driver's license on a bedside table.

Officer Damewood testified that he saw the Defendant outside the apartment but that he did not speak with the Defendant. Officer Damewood stated that he was familiar with the area and that a childcare agency was located across the street and that a school was located one block away.

Knoxville Police Officer Greg Coker testified that after he arrived in the apartment, Officer Damewood told him about the crack cocaine found during the initial search. Officer Coker stated that based on his experience, it appeared that the crack cocaine was packaged for sale. Officer Coker said that he observed the Defendant in a patrol car wearing Nike shoes and that the shoes appeared to be from the same shoebox found inside the master bedroom closet.

Officer Coker testified that Ms. Garrett "also resided in the house with the Defendant" and that Ms. Garrett pleaded guilty to facilitation of distribution of cocaine. Officer Coker testified that Ms. Garrett consented to an additional search of the

apartment. Officer Coker stated that Ms. Garrett and the Defendant shared the master bedroom, that they were both criminally charged, and that based on the location of the evidence, he believed both the Defendant and Ms. Garrett were involved in the crime.

Upon questioning by the trial court, Officer Coker testified that he arrived in the apartment while officers were searching for the suspects but that he did not search the master bedroom until Ms. Garrett consented. Officer Coker said that both male and female clothing were in the master bedroom closet.

Tennessee Bureau of Investigation (TBI) Special Agent John Scott testified that he analyzed the substance contained in one of eight baggies, that the substance tested positive for cocaine base, and that it weighed 1.98 grams. Special Agent Scott stated that he weighed the other seven baggies and that they had a combined weight of 13.05 grams, which included the substance and packaging material.

Donna Roach testified that she was employed by the City of Knoxville Geographic Information System as a map maker. Ms. Roach stated that she created a map showing the location of the Defendant's apartment and that the apartment was located within 1000 feet of three daycare centers and one school.

Robert Evans, Principal of Knoxville Baptist Christian School, testified that the private school operated for forty-two years and that it was in operation on July 5, 2011, although the facilities were closed for summer break. Principal Evans was shown a map of the area and said that the map was accurate.

Melissa Thomas testified that she was employed by the Tennessee Department of Human Services and that she monitored licensed childcare agencies in Knox County. Ms. Thomas stated that all three childcare agencies located within 1000 feet of the Defendant's apartment were licensed and operating on July 5, 2011.

Kayla Reed, the Defendant's niece, testified for the defense that on July 2, 2011, the Defendant called her and said Ms. Garrett had "put him out" and that he asked if he could "bring his stuff over." Ms. Reed said that the Defendant brought "two trash bags and two blue totes" to her home which contained the Defendant's clothes and shoes. Ms. Reed said that the Defendant stayed overnight in her home on July 2, July 3, and July 4. Ms. Reed testified that the Defendant had been living with Ms. Garrett for a few months before July 2011 but that he lived in her home on July 5, 2011.

Upon questioning from the trial court, Ms. Reed testified that the Defendant possessed his wallet while staying in her home. On redirect examination, Ms. Reed testified that the Defendant's belongings were still in her home and that the Defendant was wearing black Nike shoes on the night he came to her home.

-6-

Erin Monroe testified for the State on rebuttal that she was required to monitor the Defendant's residency. The Defendant reported living with Ms. Garrett in the apartment on June 7, 2011. Ms. Monroe stated that she last visited the Defendant at the apartment on June 15, 2011, and that his belongings were present. Ms. Monroe said that the Defendant was required to inform her of address changes and to ask for permission to move and that the Defendant never notified her of an address change or requested permission to move before the July 5, 2011 search.

Upon this evidence, the Defendant was convicted of possession with intent to sell 0.5 gram or more of cocaine in a drug-free school zone, possession with intent to deliver 0.5 gram or more of cocaine in a drug-free school zone, possession with intent to sell 0.5 gram or more of cocaine within a drug-free childcare zone, possession with intent to deliver 0.5 gram or more in a drug-free childcare zone, possession of a firearm during the commission of a dangerous felony, and unlawful possession of a weapon by a convicted felon. The trial court sentenced the Defendant to an effective twenty years' confinement. This appeal followed.

## I.    Motion to Suppress

The Defendant contends that the trial court erred by denying his motion to suppress the seized evidence. He argues that the initial search of the apartment was unconstitutional because a minor cannot consent to a warrantless search of a parent's home. The Defendant argues that even if a minor could consent, Junisha's consent was not voluntary because of the coercive nature of the circumstances. The Defendant argues that the evidence should have been suppressed because it was fruit of the poisonous tree. The State responds that the initial search was constitutional because a juvenile can consent to a search and that even if Junisha did not consent, exigent circumstances supported the warrantless entry.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures.

*See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7.  Warrantless seizures are "presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the . . . seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997); *see Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

One such exception to the warrant requirement exists for a search conducted pursuant to valid consent.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  Consent for a warrantless search may be given by the defendant or by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see State v. Talley*, 307 S.W.3d 723, 734 (Tenn. 2010).  Common authority is shown by

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 172 n.7; *see Bartram*, 925 S.W.2d at 231.

The record reflects that the trial court properly denied the Defendant's motion to suppress because the question as to whether a juvenile can consent to a warrantless search of a parent's home is not determinative in this case.  The record reflects that Ms. Garrett gave valid consent to a subsequent search of the apartment.  After officers first entered the apartment to search for the suspects, Officer Damewood saw crack cocaine inside a box of baggies in plain view in the master bedroom closet but that he did not touch or remove the box from the closet.  Officer Damewood said that he continued searching the master bedroom, that he saw the plate containing white residue and razor blades under the bed, and that he did not remove the plate.

After Officer Damewood completed the initial search for the suspects, Ms. Garrett had returned home and consented to a subsequent search of the apartment.  During the subsequent search, officers seized the crack cocaine in plain view and found the firearm, ammunition, baggies, scissors, and cash inside a shoebox.  The record reflects that none of the evidence used to convict the Defendant was seized until after Ms. Garrett consented to a warrantless search of the apartment she shared with the Defendant.  The Defendant is not entitled to relief on this basis.

## II.    Sufficiency

The Defendant contends that the evidence is insufficient to prove that he had constructive possession of the crack cocaine, firearm, or ammunition found during the search. The Defendant argues that no forensic evidence or testimony proved he had possession and that trial testimony showed he did not live in the apartment at the time of the search. The State responds that the evidence is sufficient to prove the Defendant had constructive possession of the seized items. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

Possession may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession requires a showing that a defendant had "the power and intention at a given time to exercise dominion and control over . . . [the item] either directly or through others." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (internal quotations and citation omitted). "'In essence, constructive possession is the ability to reduce an object to actual possession.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 445 F.2d 495, 498 (5th Cir. 1979)). "Constructive possession depends on the totality of the circumstances in each case" and "may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing T.C.A. § 39-17-419 (2006)).

We conclude that the evidence is sufficient to support the jury's findings that the Defendant had constructive possession of the cocaine, firearm, and ammunition. The record reflects that the Defendant reported living with Ms. Garrett in the apartment on June 7, 2011 to Ms. Monroe, that Ms. Monroe had visited the Defendant in the apartment

on June 15, 2011, and that the Defendant's belongings were in the apartment. Ms. Monroe stated that the Defendant did not report a change of address and did not request permission to move.

Officer Damewood found the Defendant's driver's license on a bedside table. Officer Damewood also found a box of baggies containing crack cocaine in the master bedroom closet, and Officer Coker saw both male and female clothing in the closet. Officer Coker said that after the Defendant was arrested, it appeared the Defendant was wearing shoes that matched the shoes depicted on the label of the shoebox, which contained the firearm and ammunition. The jury's verdict reflects that it credited the proof that the Defendant lived at the home where the crack cocaine, firearm, and ammunition were found. The Defendant is not entitled to relief on this basis.

The Defendant does not raise on appeal whether the trial court erred in submitting a second written order denying the Defendant's motion to reconsider without hearing Junisha's testimony. However, we note that it is appropriate procedure for a trial court judge to be present in a courtroom when an offer of proof is made on the record or when a witness's testimony is presented. While the trial judge's absence during the Defendant's offer of proof does not entitle the Defendant to appellate relief in this case, we caution the trial court that the irregular procedure employed for the Defendant's offer of proof may be a cause for reversal on other facts, and we believe the correct practice to be for the judge to be present during all judicial proceedings before the court.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE