IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 24, 2018 Session

## STATE OF TENNESSEE v. WELLINGTON THOMAS

**Appeal from the Criminal Court for Scott County**
No. 10847     Elizabeth C. Asbury, Chancellor

————————————————————

## No. E2017-01859-CCA-R3-CD

————————————————————

Defendant, Wellington Thomas, pled guilty to driving under the influence ("DUI"), second offense, and evading arrest. In doing so, Defendant reserved a certified question of law regarding the legality of his traffic stop. The police officer that stopped Defendant observed Defendant's vehicle touching the fog line twice and crossing the centerline dividing southbound lanes of traffic without a signal. The basis for the traffic stop cited by the police officer was that Defendant had failed to maintain his lane. Defendant filed a motion to suppress and contended that the traffic stop was unconstitutional. The trial court denied the motion to suppress. After a review of the record and the dash camera video depicting Defendant's driving, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert R. Kurtz, Knoxville, Tennessee, for the appellant, Wellington Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jared R. Effler, District Attorney General; and Ron Laffitte, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Around 4:00 a.m. on March 21, 2015, Defendant drove his vehicle, a "Chevy Trailblazer," southbound on Highway 27 in Oneida, Tennessee. At a location where the road expands from one southbound lane to two southbound lanes, Officer Joshua

Kennedy observed Defendant's vehicle "move over to take the right lane" and make "contact with the fog line." Officer Kennedy continued to follow Defendant travelling south on Highway 27. Officer Kennedy's on-board dash camera recorded Defendant's vehicle making contact with the fog line for a second time at the "04:06:00" timestamp in the video. Officer Kennedy testified that over thirty seconds elapsed between the first contact with the fog line and the second contact with the fog line. The tires of Defendant's car did not completely cross the fog line either time. After the second contact with the fog line, Defendant's vehicle drifted from the right lane in the direction of the left lane. Eventually, Defendant's vehicle straddled the centerline dividing the two southbound lanes of Highway 27 from the "04:06:10" timestamp in the video until the "04:06:16" timestamp. Officer Kennedy estimated that Defendant straddled the centerline dividing the two southbound lanes for approximately "300 feet." Defendant's left turn signal then illuminated nearly simultaneously with Officer Kennedy's activation of his blue lights on his patrol vehicle. At the time that Officer Kennedy activated his blue lights, Defendant's car continued to straddle the centerline dividing the two southbound lanes. Eventually, Defendant pulled over and was arrested.

As a result of Officer Kennedy's pulling over Defendant, a Scott County grand jury indicted Defendant for DUI per se, second offense, in Count One, DUI in Count Two, and evading arrest in Count Three. Prior to his plea, Defendant filed a motion to suppress the evidence resulting from his traffic stop, and a hearing was held on the motion.

At the hearing on the motion, Officer Kennedy testified regarding his decision to turn on his car's blue lights and pull over Defendant. Officer Kennedy said that the basis for pulling over Defendant was "failure to maintain [his] lane," and Officer Kennedy claimed that Defendant committed that offense at the time that the tires of Defendant's vehicle contacted the fog line. However, Officer Kennedy stated that his decision to pull over Defendant was based on Defendant's vehicle contacting the fog line and "taking up both southbound lanes."

Officer Kennedy did not observe any obstacle in the road which would have required Defendant to exit his lane or cross the centerline dividing the southbound lanes. Officer Kennedy agreed that it was impossible to change lanes on a divided highway without taking up both lanes for a short period of time. Also, Officer Kennedy admitted that if Defendant had used a left turn signal before he crossed the centerline dividing the southbound lanes, Officer Kennedy would not have initiated a traffic stop. Officer Kennedy stated that it would have been "more correct" for Defendant to use his left turn signal before he exited the right hand lane and crossed the centerline dividing the southbound lanes. According to Officer Kennedy, the use of a left turn signal "would be signaling that he had the intent to change lanes safely [and] that he would have been

- 2 -

checking his mirrors looking for any traffic hazards. Additionally, Officer Kennedy said a turn signal "would have been letting other motorists know that he intended to leave . . . the right hand lane [and enter] into the left hand lane."

After argument from Defendant and the State, the trial court ruled that Officer Kennedy had reasonable suspicion based on the totality of the circumstances to stop Defendant and determine whether criminal activity had occurred and denied Defendant's motion to suppress. Defendant subsequently pled guilty in Count One, DUI per se, second offense, and Count Three, evading arrest. Count Two, DUI, was dismissed. As a part of his plea agreement and the final order regarding his plea, Defendant reserved a certified question of law that is now before this Court, which is as follows:

> Whether the stop of Defendant's vehicle by Officer Kennedy of the Oneida Police Department on March 21, 2015, violated Defendant's rights under the Fourth Amendment to the U.S. Constitution and Article I, Section 7 of the Tennessee Constitution and whether any evidence, statements, and blood tests obtained as a result of said stop should be suppressed as the fruits of an unconstitutional seizure, due to the fact that there was no reasonable suspicion, based on the totality of [the] circumstances, to believe that a traffic violation had been committed under either [Tennessee Code Annotated section] 55-8-123 or [Tennessee Code Annotated section] 55-8-143.

*Analysis*

Defendant argues that his certified question is dispositive and Officer Kennedy lacked reasonable suspicion to support the traffic stop because Defendant's vehicle merely "touched" but never crossed the fog line and because a turn signal was not necessary when Defendant "merged" from the right lane to the left lane. The State responds by arguing that Defendant's failure to maintain his lane by coming into contact with the fog line twice and straddling lanes without using a turn signal in the early hours of the morning gave Officer Kennedy reasonable suspicion based on the totality of the circumstances. At oral argument, the State abandoned its argument regarding whether the certified question is dispositive. We hold that the certified question is dispositive and agree with the State.

### I. Certified Question

A certified question must be dispositive of the case. Tenn. R. Crim. P. 37(b)(2)(iv). A question is dispositive when this Court must either affirm the judgment of conviction or reverse and dismiss the charges. *State v. Dailey*, 235 S.W.3d 131, 134

(Tenn. 2007). This Court is not bound by the determination of the trial court or the parties that the certified question of law is dispositive of the case, and we must make an independent determination of whether the certified question is dispositive. *Dailey*, 235 S.W.3d at 134-35.

Here, the Defendant's certified question is limited to whether there existed reasonable suspicion that Defendant had violated Tennessee Code Annotated section 55-8-123 or Tennessee Code Annotated section 55-8-143. In *State v. James Larry Williams*, we found a very similar certified question to be dispositive. No. M2017-01830-CCA-R3-CD, 2018 WL 1976176, at *3 (Tenn. Crim. App. Apr. 26, 2018) (holding that a certified question regarding the existence of probable cause that the defendant violated Tennessee Code Annotated section 55-8-123(1) was dispositive), *perm. app. filed* (Tenn. June 18, 2018). We see no reason to depart from the reasoning in *James Larry Williams* and conclude that the certified question is properly before this Court.

## II. Motion to Suppress

Generally, we will uphold a trial court's findings of fact at a suppression hearing unless the evidence preponderates to the contrary. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* "We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). However, when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, like a video, we review that portion of the record de novo. *See State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). As to the trial court's application of the law to the facts, however, we apply a de novo standard of review. *Keith*, 978 S.W.2d at 864.

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. *See Binette*, 33 S.W.3d at 218. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009).

In evaluating the constitutionality of warrantless searches, this Court must "evaluate the search or seizure under traditional standards of reasonableness" by balancing an individual's privacy interests against legitimate governmental interests. *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to

suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997). The State has the burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

The moment that a police officer turns on the blue lights, the "police officer has clearly initiated a stop and has seized the subject of the stop." *Binette*, 33 S.W.3d at 218. "One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997)). In cases involving a seizure when a police officer pulls over a vehicle, the police officer must have reasonable suspicion of criminal activity, supported by specific and articulable facts, at the time that the police officer turns on the blue lights. *Binette*, 33 S.W.3d at 218. "Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity . . . , and it is determined by considering the totality of the circumstances surrounding the stop . . . ." *Id.* (internal citations omitted). We review the validity of a stop from a "purely objective perspective," and this Court may consider "relevant circumstances demonstrated by the proof even if not articulated by the testifying officer as the reasons for the stop." *State v. Smith*, 484 S.W.3d 393, 402 (Tenn. 2016).

In the present case, Defendant was "seized" within the meaning of the state and federal constitutions the moment Officer Kennedy activated his car's blue lights. In order for that seizure to be constitutionally valid, Officer Kennedy must have possessed at least reasonable suspicion, supported by specific and articulable facts, that Defendant had committed or was about to commit an offense. Despite Defendant's protestations that this case involves the failure to use a turn signal or that he never crossed, but merely touched a fog line, we view the applicable law for the facts at issue differently and find our supreme court's opinion in *Smith* to be instructive.

In *Smith*, a police officer initiated a traffic stop of the defendant after observing the defendant's car "once cross and twice touch the fog line marking the outer right lane boundary on an interstate highway." *Id.* at 398. The police officer testified that he stopped the defendant because she "failed to maintain her lane of travel as required by Tennessee Code Annotated section 55-8-123." *Id.* As a result of the stop, the defendant was charged with two alternative counts of DUI and filed a motion to suppress on the basis that the traffic stop was unconstitutional. *Id.* The trial court denied the motion, finding that the police officer had probable cause to stop the defendant because crossing the fog line was a violation of Tennessee Code Annotated section 55-8-123. *Id.* at 399.

On appeal, this Court affirmed the trial court's judgment on the merits. *Id.* Our supreme court granted permission to appeal and held that the defendant was properly seized because the police officer had reasonable suspicion that the defendant violated Tennessee Code Annotated section 55-8-123(1).

Tennessee Code Annotated section 55-8-123(1), as applied in *Smith* and as applicable in this case, states the following:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all other consistent with this section, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]

Our supreme court noted that Section 55-8-123(1) "does not create an offense that always may be discerned simply by observation." *Smith*, 484 S.W.3d at 404. "Rather, Section 55-8-123(1) contains two contingencies that impact whether crossing over a fog (*or other lane*) line is an offense." *Id.* (emphasis added). The first contingency is that a driver must remain in a single lane so far as it is "practicable" to do so. *Id.* "As nearly as practicable" means that a motorist must not depart from his or her lane more than is necessary for the circumstance requiring the excursion. *Id.* at 409. If remaining in a single lane is impracticable, then the second contingency is that a driver may leave his or her lane of travel only if the movement can be made safely. *Id.* at 404. Ultimately, our supreme court held that "Section [55-8-123(1)] is violated when a motorist strays outside her lane of travel when *either* (1) it is practicable for her to remain in her lane of travel *or* (2) she fails to first ascertain that the maneuver can be made with safety." *Id* at 408. Minor lane excursions can violate Section 55-8-123(1) even if it does not create a specific observed danger. *Id.*

Our supreme court made the following observation when addressing how a police officer is to determine if Section 55-8-123(1) has been violated:

> We caution that in many cases it will not be possible for an observing officer to discern either the reason for a driver's leaving her lane of travel or whether she first ascertained the safety of the maneuver. In those cases, the officer would have to investigate further in order to determine whether the driving maneuver violated Section [55-8-123(1)]. In such cases, the officer would not have probable cause to stop the motorist but might have sufficient reasonable suspicion to do so.

*Id.* at 410. Our supreme court went on to say, "[A]n officer's seizure of a motorist for a suspected violation of Section [55-8-123(1)] must be supported, at a minimum, by a reasonable suspicion, based on all of the relevant circumstances, that the driver left her lane of travel when it was practicable to remain there and/or left her lane of travel without first ascertaining that it was safe to do so." *Id.* at 411. If a police officer observes circumstances where it was practicable for the driver to remain in his or her lane or that the driver maneuvered without first ascertaining the safety of the maneuver, then that observation would weigh in favor of reasonable suspicion. *Id.* at 410-11.

"Crossing over a *lane line* with two of a car's four wheels is an instance of leaving one's lane of travel." *Id.* at 412 (emphasis added). When a seizure is the result of a driver failing to maintain his or her lane of travel, then the proper basis for analyzing the constitutionality of the stop is whether the police officer had reasonable suspicion, supported by specific and articulable facts, that the driver had violated Section 55-8-123(1) by crossing lane line. *Id.*

In this case, Officer Kennedy testified that he seized Defendant for "failure to maintain [his] lane." Officer Kennedy was following Defendant at approximately 4:06 a.m., a time at which a driver is more likely to be fatigued or impaired. Most importantly, it is obvious from a review of the dash camera video that Defendant crossed the centerline dividing the southbound lanes on Highway 27 and straddled that centerline for approximately six seconds. Contrary to Defendant's assertions, this is not a case where no lane lines on the road were crossed as in *State v. Roy D. Seagraves*, No. M2014-02334-CCA-R3-CD, 2015 WL 6746580 (Tenn. Crim. App. Nov. 5, 2015), *no perm. app. filed*. The video also shows that Defendant touched the fog line prior to crossing the centerline, and Officer Kennedy testified that Defendant touched the fog line once prior to the instance recorded on the video. The dash camera video depicts no obstacles in the road, clear driving conditions, and no turn signal preceding Defendant's lane departure. The totality of these circumstances indicates an inadvertent lane excursion and establishes reasonable grounds to suspect that Defendant left his lane accidentally, not because it was impracticable to remain in his lane. Our supreme court noted in *Smith* that if a driver leaves his or her lane accidentally rather than deliberately, it is safe to assume that he or she did not first ascertain whether the maneuver could be made safely. *Smith*, 484 S.W.3d at 414. Our review of the video reveals that it appeared practicable for Defendant to remain in his lane and that he failed to ascertain if the lane excursion could be made safely. Both of these findings weigh in favor of reasonable suspicion.

Defendant also argues that Officer Kennedy did not have reasonable suspicion that Defendant violated Tennessee Code Annotated section 55-8-143, which dictates when a

turn signal must be used. Section (a) of Tennessee Code Annotated section 55-8-143 provides:

> Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that that movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal required in this section, plainly visible to the driver of the other vehicle of the intention to make such movement.

The video shows that Defendant did not initially use his left turn signal before moving into the second southbound lane. Officer Kennedy estimated that Defendant straddled the centerline dividing the two southbound lanes for approximately "300 feet." Defendant's left turn signal then illuminated nearly simultaneously with Officer Kennedy's activation of his blue lights on his patrol vehicle. At the time that Officer Kennedy activated his blue lights, Defendant's car continued to straddle the centerline dividing the two southbound lanes.

We review Officer Kennedy's decision to seize Defendant from the perspective of a reasonable officer at the moment Officer Kennedy activated his blue lights. At that point, there was no indication that Defendant would be turning left at the next intersection or that Defendant was attempting to change to the left lane while continuing southbound. It is irrelevant whether the use of a turn signal was necessary to safely move from the far right southbound lane to the second southbound lane of travel. It is only with hindsight that one can argue that Defendant was changing lanes without a turn signal and that Defendant did not violate Tennessee Code Annotated section 55-8-143. From Officer Kennedy's point of view during the relevant time frame, a reasonable police officer would deduce that Defendant failed to maintain his lane by accidentally drifting across the centerline dividing the two southbound lanes after touching the fog line twice.

We conclude that this is a scenario in which "the officer would have to investigate further in order to determine whether the driving maneuver violated Section [55-8-123(1)]" as described in *Smith*. Accordingly, we hold that the totality of the circumstances surrounding Defendant's traffic stop established reasonable suspicion, supported by specific and articulable facts, that Defendant violated Section 55-8-123(1) when he crossed the centerline dividing the two southbound lanes of travel on Highway 27. *See also State v. Bradley Darrin Williams*, No. M2015-00946-CCA-R3-CD, 2016 WL 4064732, (Tenn. Crim. App. July 26, 2016) (holding that a police officer had reasonable suspicion of a violation of Tennessee Code Annotated section 55-8-123(1) under circumstances similar to this case), *no perm. app. filed.* Thus, Officer Kennedy was justified in stopping Defendant to investigate the reason for his lane departure. Defendant is not entitled to relief.

*Conclusion*

For the aforementioned reasons, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE